**FILED**

APR 03 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| In re AMERICAN BOARD OF MEDICAL SPECIALTIES MAINTENANCE OF CERTIFICATION ANTITRUST LITIGATION | ) ) ) ) ) MDL No. 2888 |

**CONSOLIDATED REPLY BRIEF IN SUPPORT OF MOTION OF PLAINTIFFS STEVE MANNIS, M.D., TONIANNE FRENCH, M.D., AND LOUIS LIM, M.D., TO TRANSFER RELATED ACTIONS TO THE SOUTHERN DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | ARGUMENT | 4 |
| | A. Transfer Under 28 U.S.C. §1407 Is Appropriate | 4 |
| |     1. All of the Related Actions Derive from the Same Core Set of Facts | 5 |
| |     2. Transfer and Centralization in One District Will Promote the Most Efficient Conduct of the Related Actions | 8 |
| | B. The Southern District of California Remains an Appropriate Forum for Centralization of the Related Actions | 11 |
| III. | CONCLUSION | 14 |

1548221_1

# TABLE OF AUTHORITIES

Page

**CASES**

*In re Air West, Inc. Sec. Litig.*,
  384 F. Supp. 609 (J.P.M.L. 1974)...........................................................................................7

*In re Bank of New York Mellon Corp. Foreign Exch. Transactions Litig.*,
  857 F. Supp. 2d 1371 (J.P.M.L. 2012)....................................................................................5

*In re Blue Cross Blue Shield Antitrust Litig.*,
  No. MDL 2406, 2017 WL 6759056 (J.P.M.L. Oct. 4, 2017) .................................................8

*In re Brimonidine Patent Litig.*,
  507 F. Supp. 2d 1381 (J.P.M.L. 2007)..................................................................................13

*In re California Wholesale Electricity Antitrust Litig.*,
  No. 02-cv-1993, MDL No. 1405 (S.D. Cal.) ........................................................................13

*In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
  325 F. Supp. 3d 1374 (J.P.M.L. 2018)..................................................................................10

*In re ClassicStar Mare Lease Litig.*,
  528 F. Supp. 2d 1345 (J.P.M.L. 2007)..................................................................................12

*In re Diet Drugs Prods. Liab. Litig.*,
  990 F. Supp. 834 (J.P.M.L. 1998).........................................................................................13

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
  No. MDL 2800, 2018 WL 3770539 (J.P.M.L. Aug. 8, 2018) ..............................................12

*In re Fed. Election Campaign Act Litig.*,
  511 F. Supp. 821 (J.P.M.L. 1979)...........................................................................................7

*In re Incretin-Based Therapies Products Liability Litig.*,
  No. 13-md-02452 (S.D. Cal.)................................................................................................13

*In re Janus Mut. Funds Inv. Litig.*,
  310 F. Supp. 2d 1359 (J.P.M.L. 2004)..................................................................................13

*In re Jiffy Lube International, Inc., Text Spam Litig.*,
  No. 11-md-02261 (S.D. Cal.)................................................................................................13

*In re Lehman Bros. Hldgs., Inc.*,
  598 F. Supp. 2d 1362 (J.P.M.L. 2009)..................................................................................10

*In re Midland Credit Management, Inc., Telephone Consumer
  Protection Act (TCPA) Litig.*,
  No. 11-MD-02286 (S.D. Cal.) ..............................................................................................13

1548221_1

|  | Page |
|---|---|

*In re Musical Instruments and Equipment Antitrust Litig.*,
   No. 09-md-02121 (S.D. Cal.)..................................................................................13

*In re Niaspan Antitrust Litig.*,
   971 F. Supp. 2d 1346 (J.P.M.L. 2013).....................................................................9

*In re Packaged Seafood Products Antitrust Litig.*,
   No. 15-md-02670 (S.D. Cal.)..................................................................................13

*In re Pharm. Benefit Plan Adm'rs Pricing Litig.*,
   206 F. Supp. 2d 1362 (J.P.M.L. 2002).....................................................................8

*In re Polyurethane Foam Antitrust Litig.*,
   753 F. Supp. 2d 1376 (J.P.M.L. 2010).....................................................................8

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
   290 F. Supp. 2d 1374 (J.P.M.L. 2003)...............................................................3, 11

*In re Prograf Antitrust Litig.*,
   789 F. Supp. 2d 1380 (J.P.M.L. 2011).....................................................................7

*In re Sony Corp. SXRD Rear Projection TV Mktg. Sales Practices
   & Prod. Liab. Litig.*,
   655 F. Supp. 2d 1367 (J.P.M.L. 2009)...................................................................10

*In re Sony Gaming Networks and Customer Data Security Breach Litig.*,
   No. 11-md-2258 (S.D. Cal.)....................................................................................13

*In re Suboxone Antitrust Litig.*,
   949 F. Supp. 2d 1365 (J.P.M.L. 2013).....................................................................9

*In re TJX Cos.*,
   493 F. Supp. 2d 1382 (J.P.M.L. 2007)...................................................................10

*In re Travel Agent Comm'n Antitrust Litig.*,
   290 F. Supp. 2d 1381 (J.P.M.L. 2003).....................................................................4

*In re Urethane Antitrust Litig.*,
   MDL No. 1616 (J.P.M.L. June 16, 2005)................................................................5

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
   883 F. Supp. 2d 1350 (J.P.M.L. 2012)...................................................................12

*In re WorldCom, Inc., Sec. & ERISA Litig.*,
   226 F. Supp. 2d 1352 (J.P.M.L. 2002)...................................................................14

Page

*In re Xyberbaut Corp. Sec. Litig.*,
    403 F. Supp. 2d 1354 (J.P.M.L. 2005) .................................................................................. 12

*Lazarou v. American Board of Psychiatry and Neurology*,
    No. 19-cv-01614 (N.D. Ill.) ( Lee, J.) ............................................................................. *passim*

*Mannis v. American Board of Medical Specialties*,
    No. 19-cv-0341-L (S.D. Cal.) (Lorenz, J.) ..................................................................... *passim*

*Mannis, Kenney v. American Board of Internal Medicine*,
    No. 18-CV-05260 (E.D. Pa.) (Kelly, J.) .......................................................................... *passim*

*Siva v. American Board of Radiology*,
    No. 19-cv-01407 (N.D. Ill.) (Alonso, J.) ......................................................................... *passim*

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §1 ................................................................................................................................................ 5
    §2 ................................................................................................................................................ 5

28 U.S.C.
    §1404 ........................................................................................................................................ 10
    §1407 .................................................................................................................................. *passim*
    §1407(a) ..................................................................................................................................... 4

Rule 6.1(d) ...................................................................................................................................... 1

## SECONDARY AUTHORITIES

*Manual for Complex Litigation* (Fourth) (2004)
    §20.131 ....................................................................................................................................... 4

1548221_1

Pursuant to Rule 6.1(d), plaintiffs Steve Mannis, M.D., Tonianne French, M.D., and Louis Lim, M.D. ("Movants"), in *Mannis v. American Board of Medical Specialties*, No. 19-cv-0341-L (S.D. Cal.) (Lorenz, J.), submit this Reply in further support of their motion (the "Motion") to transfer the Related Actions to the to the United States District Court for the Southern District of California for coordinated or consolidated pretrial proceedings before the Honorable M. James Lorenz pursuant to 28 U.S.C. §1407.[1]

## I.   PRELIMINARY STATEMENT

The Transfer Opponents present a deceptively superficial – but demonstrably false – argument. In short, they assert that each of the Related Actions is unrelated to the others, involving different defendants, different theories of liability and different sets of relevant facts. Indeed, the entirety of their argument against centralization hinges on their claim that the actions do not share a common factual core.

To make their argument that the Related Actions are distinct, the Transfer Opponents ignore the uniform factual underpinnings and overlapping participants that form the core of the alleged law violations in each of the actions. The actual allegations in the collective complaints show that the Related Actions are not just related conceptually but derive from the very same anticompetitive conspiracy in which the Defendants and all other American Board of Medical Specialties member boards (collectively, "ABMS") are alleged participants in violation of the Sherman Antitrust Act and other asserted fair-competition laws. *See, e.g., Mannis* Cpt., ¶¶1-7, 16-41 (specifically identifying

---

[1]   The "Related Actions" include *Mannis*, *Kenney v. American Board of Internal Medicine*, No. 18-CV-05260 (E.D. Pa.) (Kelly, J.), *Siva v. American Board of Radiology*, No. 19-cv-01407 (N.D. Ill.) (Alonso, J.) and *Lazarou v. American Board of Psychiatry and Neurology*, No. 19-cv-01614 (N.D. Ill.) (Lee, J.). The *Kenney*, *Siva* and *Lazarou* Plaintiffs are all represented by the same counsel. Each of the parties to the *Kenney*, *Siva* and *Lazarou* actions oppose centralization (the "Transfer Opponents"). Unless otherwise noted, citations are omitted and emphasis is added, here and throughout.

- 1 -

1548221_1

the ABMS and each of its 24 member boards as co-conspirators), and *id.*, ¶¶42-56 (detailing their Maintenance of Certification ("MOC") related tying and monopoly maintenance scheme).

Importantly, while the *Mannis* factual allegations encompass each of the Related Actions, the participation of the ABMS and all of its member boards in this same underlying MOC tying and monopoly maintenance conspiracy is not alleged in *Mannis* alone. Indeed, in addition to alleging the same MOC-related Sherman Antitrust Act violations as *Mannis*, the *Kenney* Plaintiffs (who, along with the *Siva* and *Lazarou* Plaintiffs filed a single opposition to transfer) also expressly identify the same underlying scheme and allege that, along with ABMS, each and every one of its member boards actively participated in a RICO Enterprise to accomplish MOC tying and monopoly maintenance violations. *See, e.g., Kenney* Amd. Cpt., ¶¶157-161 (specifically identifying ABMS and all 24 its member boards as RICO Enterprise participants).[2]

Common fact questions are the keystone of transferability. And where, as here, multiple actions in multiple districts allege wrongdoing based on the same or similar facts, transfer is appropriate. Further, transfer under such circumstances will promote the most efficient

---

[2] Not surprisingly, defendant ABMS itself also routinely refers to collective member board MOC as "***ABMS MOC***" and publicly touts its oversight thereof, claiming:

> Established in 1933, the American Board of Medical Specialties (ABMS) continues to be the leading not-for-profit organization ***overseeing physician certification*** in the United States. ABMS ***establishes the standards its 24 Member Boards*** use to develop and implement educational and professional evaluation, assessment, and certification of physician specialists.

*See, e.g.*, Press Release, American Board of Medical Specialties "New Maintenance of Certification Reporting Language Effective October 15, 2015 (Sept. 29, 2015) (https://www.abms.org/media/99963/new-moc-display-language.pdf) ("The American Board of Medical Specialties (ABMS), a leading organization that oversees physician Board Certification and the Program for Maintenance of Certification (***ABMS MOC***®) in the United States, has approved new MOC reporting language effective October 15, 2015."). *See also, e.g.*, American Board of Medical Specialties, ABMS MOC Overview and FAQs (Jan. 2016) (https://www.abms.org/media/93956/abms-moc_overview_6-15.pdf) ("***ABMS MOC*** is recognized a key quality marker by insurers, hospitals, quality organizations, and the federal government.").

administration of the cases. Given the substantial factual overlap and alleged involvement of the ABMS and all 24 of its member boards in a single antitrust conspiracy and/or RICO Enterprise, the cases will involve – whether party or nonparty discovery – a significant number of the same witnesses, document discovery, core testimony, pretrial issues and motion practice. The web of discovery and motion practice in which the same large volume of persons and entities are involved – in some cases both as parties and nonparties – over four actions in three districts creates not only a likelihood but a near certainty of duplicative proceedings and inconsistent rulings. In complex class action cases such as this, involving complicated antitrust, RICO, consumer protection and related claims, the risk is compounded, whether considering discovery alone or the inevitable disputes that will certainly arise surrounding substantive and procedural issues. Centralization eliminates all risks of such inefficiencies and inconsistencies. The Related Actions require coordination. Transfer to a single district accomplishes this.

The Southern District of California remains an ideal forum to oversee the Related Actions. Where, as here, the alleged antitrust conspiracy/RICO Enterprise involves participants residing in almost a quarter of the United States and inflicted injury on doctors spanning the country, efficiency factors such as a court's small number of MDLs and caseload take priority in the analysis over geography, or any particular parties' location or preferred venue. *See In re Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d 1374, 1375-76 (J.P.M.L. 2003).

Here, no Transfer Opponent disputes that the Southern District of California has the resources and is available to be assigned this MDL. The Southern District of California is currently overseeing only four MDLs and Judge Lorenz is not presently assigned any MDLs. The Transfer

Opponents also do not dispute that Judge Lorenz is a capable jurist with the temperament and case management skills to manage the Related Cases in an efficient and expeditious manner.[3]

Movants respectfully request, therefore, that the Panel transfer the Related Actions (and any later-filed tagalong actions) to the Southern District of California before Judge Lorenz for coordinated or consolidated pretrial proceedings.

## II.    ARGUMENT

### A.    Transfer Under 28 U.S.C. §1407 Is Appropriate

While the parties opposing centralization paint a demonstrably inaccurate picture of the Related Actions' factual and legal commonalities, all parties agree – as they must – that the decision to centralize is governed by the standards set forth in 28 U.S.C. §1407(a). Centralization is appropriate when three criteria are met: (1) the actions share "one or more common questions of fact"; (2) transfer "will be for the convenience of parties and witnesses"; and (3) transfer will "promote the just and efficient conduct of such actions." 28 U.S.C. §1407(a). The fundamental purposes of transfer under §1407 include eliminating duplicative discovery, avoiding conflicting rulings and schedules, reducing litigation costs, and generating litigation efficiencies. *Manual for Complex Litigation* (Fourth) §20.131 (2004).

Importantly, however, §1407 "does not require a complete identity or even majority of common factual and legal issues as a prerequisite to centralization and that the presence of different nuances does not negate the existence of common questions of fact." *In re Travel Agent Comm'n Antitrust Litig.*, 290 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) (over a number of parties' objections,

---

[3] Proceedings in San Diego also will not present any meaningfully significant burden on the parties. Nationwide travel in class action litigation is routine and, regardless of the district in which the Related Actions are centralized, travel will be required. To that end, the San Diego International Airport is located just two miles from the Southern District of California courthouse. That witnesses can be deposed in any location, and electronic communication and electronically transmitted document production are the norm in cases like this, transfer to the Southern District of California will not place any larger or smaller burden on any party.

Panel centralized three actions filed in three different districts where they shared factual questions arising out of an alleged antitrust conspiracy); *In re Urethane Antitrust Litig.*, MDL No. 1616 (J.P.M.L. June 16, 2005), *Urethane* ECF No. 96 at 2 (noting that although the products at issue in various price fixing complaints were not identical, "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer"). Moreover, where actions arise from a common factual core, neither is "the presence of different legal theories among the subject actions" a bar to nor "complete identity of the parties" required for centralization. *In re Bank of New York Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2012).

Even a cursory review of the Related Actions' collective allegations demonstrates that they all arise from the same core set of facts involving the ABMS and its member boards' anticompetitive and unfair business conduct surrounding the tying of their sale of MOC to doctors' Initial Board Certification ("IBC") and the maintenance of their MOC monopoly.[4]

### 1. All of the Related Actions Derive from the Same Core Set of Facts

The Transfer Opponents' collectively assert that the Related Actions bear almost no resemblance to each other. They posit that the Related Actions involve different parties, and different legal theories and defenses. They even go so far as to pronounce that the Related Actions involve different facts. In fact, the very lynchpin of the Transfer Opponents' entire argument against centralization relies on their – wholly inaccurate – assertion that the "parties, facts and theories

---

[4] *See, e.g., Kenney* Amd. Cpt., ¶¶1-4, 55, 61-62, 64-66, 69-70, 73, 122-125, 127-129; *Mannis* Cpt., ¶¶5-7, 56-66, 70-74, 83-87; *Siva* Cpt., ¶¶1-4, 69, 78, 79, 83, 84, 87, 95, 101, 103, 115; and *Lazarou* Cpt., ¶¶1-4, 73-74, 82-83, 88-89, 92, 119-122, 124-126. Each of the Related Actions also uniformly assert virtually identical causes of action for violations of §§1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§1 and 2.

diverge materially." ECF No. 22 at 4; *see also e.g.*, ECF No. 26 at 7 ("[T]he facts underlying the actions are not common."); and ECF No. 29 at 1 (same).

Simply stating the "facts underlying the actions are not common," however, does not make it true. Indeed, while no Transfer Opponent appears willing to acknowledge it (including the *Kenney* Plaintiffs that make the allegations), every one of the Related Actions derive from the same core set of facts – the collective and uniform anticompetitive conduct of ABMS and its member boards in establishing MOC, including the tying of MOC purchase to doctors' IBC, and undertaking conduct to illegally maintain their MOC monopoly. The various complaints specifically describe the same underlying conspiracy involving overlapping if not entirely the same participants, including ABMS and all of its member boards. The Related Actions' complaints' actual allegations lay waste to the notion advanced by the Transfer Opponents that the Related Cases are unrelated.[5]

For example, the primary alleged wrongdoing in *Mannis* is ABMS and its member boards' participation in an antitrust conspiracy involving the establishment of the MOC monopoly, tying the purchase of MOC to IBC in order for doctors to maintain their board certification, and the maintenance of that monopoly by its participants. *Mannis* Cpt., ¶¶1-8, 42-56. In similar fashion, the *Kenney* Plaintiffs allege that "[a]t all relevant times, ABMS, its member organizations . . . , and its associate member organizations constituted an association-in-fact enterprise (the 'Enterprise')." *Kenney* Amd. Cpt., ¶157. As the *Kenney* Plaintiffs explain, "Since at least 1933 and continuing to today, the Enterprise has functioned as a continuing unit . . . with ABMS, the Member Boards, and Associate Member Boards working together in partnership." *Id.*, ¶161. *Kenney* explicitly identifies, in addition to ABMS, each and every ABMS member board as participants in the Enterprise. *Id.*,

---

[5] The centrality of the ABMS and member board MOC monopoly and anticompetitive conduct is further highlighted by the shared allegations in each of the Related Actions discussing the inability of the ABMS member boards' single shared MOC competitor, National Board of Physicians and Surgeons, to gain market share. *See Mannis* Cpt., ¶73; *Kenney* Amd. Cpt., ¶¶56-60, 68; *Siva* Cpt., ¶¶ 71-75, 82; and *Lazarou* Cpt., ¶¶75-79.

- 6 -

1548221_1

¶158. *Kenney* then describes how the "affairs of the Enterprise at all relevant times have included the continuing certification process [*i.e.*, MOC]" and how the ABMS and its member boards "adopt[ed] General Standards providing structure for continuing certification programs for the Member Boards[,]" including specific framework for such programs dictated by ABMS and the Enterprise. *Id.*, ¶160.[6]

These cases are not about the nuances of how MOC is adapted in certain respects to the medical specialties each board represents, as the Defendants assert. Rather, the cases are about the illegal and anticompetitive tying of the purchase of MOC to IBC, and the maintenance of the ABMS and its member boards' MOC monopoly, along with other wrongdoing directly attendant to such violations. It seems elementary that the ABMS and its member boards – all expressly alleged antitrust co-conspirators by the *Mannis* Plaintiffs or unified members of an alleged RICO Enterprise by the *Kenney* Plaintiffs – could unlawfully conspire to establish and illegally maintain a monopoly for the purchase of MOC while leaving the particular aspects of the continuing education and related particulars of required educational components, for example, up to each member board to customize for their respective medical specialties.

Common questions of fact are the touchstone for transferability and coordination under 28 U.S.C. §1407. *In re Fed. Election Campaign Act Litig.*, 511 F. Supp. 821, 823 (J.P.M.L. 1979). Where, as here, the collective Complaints' allegations, and persons or entities involved in the alleged wrongdoing are "based upon similar transactions and events," transfer is appropriate. *See In re Air West, Inc. Sec. Litig.*, 384 F. Supp. 609, 611 (J.P.M.L. 1974); *In re Prograf Antitrust Litig.*, 789

---

[6] Likewise, the *Siva* and *Lazarou* Plaintiffs reference the centrality of ABMS and other member boards in the underlying MOC-related antitrust violations. *See, e.g., Siva* Cpt., ¶¶42-44 (ABMS and member boards active in maintaining the MOC monopoly); *Lazarou* Cpt., ¶¶48-50 (same). As alleged in *Kenney* and *Mannis*, the member board Defendants in *Siva* and *Lazarou* did not act in a vacuum but attendant to the alleged antitrust conspiracy or RICO Enterprise involving ABMS and these Defendants' fellow ABMS member boards.

- 7 -

1548221_1

F. Supp. 2d 1380 (J.P.M.L. 2011) ("[W]e find that these three actions involve common questions of fact, and that centralization under Section 1407 . . . will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."); *In re Polyurethane Foam Antitrust Litig.*, 753 F. Supp. 2d 1376 (J.P.M.L. 2010) (centralization under §1407 appropriate in actions involving common questions of fact regarding defendants' anticompetitive conduct concerning prices charged for polyurethane products).[7]

All Plaintiffs seek damages for the same underlying conduct – the supracompetitive pricing of MOC – and allege that the same overlapping entities participated in the same conspiracy. The commonality requirement is satisfied. The Related Actions should be transferred for consolidated or coordinated pretrial proceedings in one judicial district.

### 2. Transfer and Centralization in One District Will Promote the Most Efficient Conduct of the Related Actions

As discussed above, although there are certainly differences among the Related Actions, there can be no reasonable dispute that they all involve a core set of common allegations relating to anticompetitive conduct attendant to an alleged antitrust conspiracy or RICO Enterprise and surrounding the same product – MOC. Given this substantial factual overlap, the cases will involve a significant number of the same witnesses, document discovery, core testimony, pre-trial issues and motion practice. Indeed, the alleged unlawful conduct derives from the same core facts and involves the same conspiracy/Enterprise participants. All discovery aimed at these conspirators' participation

---

[7] Moreover, where plaintiffs allege that defendants conspired with one another – even in circumstances where a plaintiff "attempts to downplay" the role of an alleged participant – transfer is appropriate despite the fact that actions may focus on anticompetitive conduct occurring in different states and be based on different damages models. *In re Blue Cross Blue Shield Antitrust Litig.*, No. MDL 2406, 2017 WL 6759056, at *1 (J.P.M.L. Oct. 4, 2017) ("'[t]ransfer under Section 1407 does not require a complete identity of common factual issues as a prerequisite to transfer, and the presence of additional facts or differing legal theories is not significant when the actions still arise from a common factual core'"); *Cf. In re Pharm. Benefit Plan Adm'rs Pricing Litig.*, 206 F. Supp. 2d 1362, 1363 (J.P.M.L. 2002) (transfer denied where there were no allegations that defendants conspired with one another).

- 8 -

in and actions undertaken concerning the establishment and maintenance of the challenged MOC monopoly, as well as attendant state and federal law violations – whether party or nonparty discovery – will be largely identical in all of the actions. The witnesses to a single conspiracy involving at least 25 entities will not change regardless of which are named as defendants in this or future tagalong actions.

Moreover, the Related Actions will likely involve many of the same pretrial issues in addition to the nature and scope of discovery discussed above, including the sufficiency of Plaintiffs' collective antitrust, consumer protection and related claims. As in the case of discovery, valuable judicial resources will be wasted if separate districts are forced to resolve these issues in separate pretrial proceedings. There is also a substantial likelihood that such duplicative proceedings will result in inconsistent rulings. *See In re Niaspan Antitrust Litig.*, 971 F. Supp. 2d 1346, 1347 (J.P.M.L. 2013); *In re Suboxone Antitrust Litig.*, 949 F. Supp. 2d 1365, 1366 (J.P.M.L. 2013). Centralization avoids these inefficiencies and inconsistencies, and promotes the just and efficient conduct of the Related Actions. Centralization is clearly appropriate.

Nonetheless, the Transfer Opponents object. They propose that these cases can be coordinated through means other than centralization in a single district.[8] This is hardly an efficient

---

[8] It is broadly asserted that "counsel for the parties to the various actions have already spoken by telephone and agreed to efficiently coordinate discovery." ECF No. 29 at 8, *accord*, ECF No. 22 at 6; ECF No. 26 at 6. This assertion misrepresents the call. A very brief call occurred on March 18, 2019, and consisted principally of the Transfer Opponents stating that they oppose centralization and repeating the same misguided arguments presented in their briefing. The *Mannis* Plaintiffs' counsel explained how almost all discovery concerning the challenged MOC conspiracy – whether party or nonparty – overlaps in all of the Related Actions. There was no agreement to coordinate discovery in the actions expressed on the call – let alone by the *Mannis* Plaintiffs – and no litigation coordination proposals were offered or discussed on the call. In any case, the chaos created by plaintiffs in four actions issuing overlapping requests and subpoenas to the alleged conspirators and Enterprise participants, the burden of these discovery recipients' responding thereto (in some circumstances as parties and in others nonparties), and the likelihood of attendant and potentially conflicting motion practice in each of these actions mandates that the Related Actions be centralized in a single district to ensure consistent and efficient administration of justice.

alternative. Risking conflicting results, different courts will waste judicial resources separately considering and ruling on the inevitable and largely identical pre-trial motions (both substantive and discovery related), different Plaintiffs will waste resources serving largely identical and redundant discovery through overlapping party and nonparty requests and subpoenas, Defendants and the various presently nonparty ABMS member boards will waste resources responding to that discovery, and district judges in multiple districts will be overseeing parallel proceedings. While the Transfer Opponents promise (without specifics or the inclusion of the *Mannis* Plaintiffs) that they can figure all this out, bald promises offer no solution to the core issue that motivates centralization in complex class action litigation – "pretrial proceedings . . . conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties."[9] *In re Lehman Bros. Hldgs., Inc.*, 598 F. Supp. 2d 1362, 1364 (J.P.M.L. 2009).[10]

---

[9] ABMS's assertion that it plans at some point to file a motion under 28 U.S.C. §1404 in the Southern District of California to transfer *Mannis* to the Northern District of Illinois does nothing to eliminate the duplication and efficiency concerns that militate in favor of 28 U.S.C. §1407 centralization. Setting aside that such a motion would be vigorously opposed and the very real prospect of its denial, even if granted the presently pending Related Actions will still be proceeding in multiple districts and still involve the same overlapping party and nonparty discovery of all alleged antitrust conspiracy and RICO Enterprise participants. Given the uniformity of the ABMS and member boards' challenged MOC monopoly-related conduct and that such conduct affects doctors certified by all ABMS specialty boards nationwide, there is also a significant likelihood that additional actions in additional district courts will be filed. *See In re Chicago Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 325 F. Supp. 3d 1374, 1376 (J.P.M.L. 2018) (centralization of actions in two districts appropriate where actions alleged conspiracy, involved a large number of affected parties and nonparties, ***and the number of defendants may increase***).

[10] *See also In re Sony Corp. SXRD Rear Projection TV Mktg. Sales Practices & Prod. Liab. Litig.*, 655 F. Supp. 2d 1367 (J.P.M.L. 2009) (centralization prevents duplication of discovery and eliminates the possibility of overlapping or inconsistent determinations by numerous courts); *In re TJX Cos.*, 493 F. Supp. 2d 1382, 1383 (J.P.M.L. 2007).

- 10 -

1548221_1

### B. The Southern District of California Remains an Appropriate Forum for Centralization of the Related Actions

After aggressively arguing against centralization premised on a materially incomplete rendition of the facts alleged, in addition to Movants' preferred transferee venue of the Southern District of California, the Transfer Opponents proffer two other districts as transferee courts – the Eastern District of Pennsylvania and the Northern District of Illinois.

Given the foundational allegations underlying ABMS and its member boards' antitrust conspiracy and RICO Enterprise, what is clear is that witnesses and evidence blanket the United States. The presently named plaintiffs reside in eight different states (three in California and one each in Michigan, Massachusetts, Washington, Tennessee, Florida, New York and Pennsylvania), the alleged conspiracy reaches every state in the country, and the conspiracy/Enterprise participants maintain their principal places of business in 12 states covering 9 of the 12 U.S. Circuit Courts' of Appeal, including the Ninth Circuit in the west, the First, Third, Fourth and Eleventh Circuits in the east, and all but the D.C., Second, and Tenth Circuits in between. *See* ECF No. 1-1 at 10 n.8 (listing the locations of ABMS and its co-conspirator member boards' principal places of business).

Given the vast geographic scope of the alleged wrongdoing – both in terms of participant locations and affected alleged victims – geography becomes largely irrelevant, particularly given the current state of the technology that has become the norm in litigation of this type, as well as the fact that nationwide travel and electronic communication are routine, with witnesses being deposed in any location, and documentary evidence as a matter of practice being produced and reviewed electronically. Transfer to any given district court will not meaningfully place any larger or smaller burden on any party.

In such circumstances, efficiency factors dominate the analysis over any particular parties' location. *See Pressure Sensitive Labelstock Antitrust Litig.*, 290 F. Supp. 2d at 1375-76 (JPML determined transfer giving greater weight to efficiency factors – *e.g.*, transferee court's small number

- 11 -

1548221_1

of current MDLs and caseload, and the transferee judge being "a seasoned jurist with a caseload favorable to receiving such an assignment" – than any particular parties' location, "[g]iven the range of locations of parties and witnesses, the geographic dispersal of constituent actions").[11]

Here, there can be no disputing that the Southern District of California has the required experience and resources to adjudicate the Related Actions, as well as expertise in complex cases. The Southern District of California's resources and caseload statistics all favor it as the transferee district. *See In re Xyberbaut Corp. Sec. Litig.*, 403 F. Supp. 2d 1354, 1355 (J.P.M.L. 2005) (A transferee forum's resources and "relatively favorable caseload statistics" weigh in favor of selection). Presently, the Southern District of California is overseeing only four pending MDLs among its 17 judges, and Judge Lorenz is not presently presiding over any, demonstrating the Court's availability.[12] The Southern District of California also moves cases promptly and efficiently from filing to disposition during the twelve months ending September 30, 2018, in an average of 6.5 months.[13] These factors strongly favor the Southern District of California. *See In re ClassicStar Mare Lease Litig.*, 528 F. Supp. 2d 1345, 1347 (J.P.M.L. 2007) ("[T]he district's general docket conditions permit us to make the Section 1407 assignment knowing that the court has the resources available to manage this litigation.").

---

[11] *See also In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012) ("[W]e look to the overall convenience of the parties and witnesses, not just those of a single plaintiff or defendant in isolation."); *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, No. MDL 2800, 2018 WL 3770539, at *1 (J.P.M.L. Aug. 8, 2018) ("While it might inconvenience some parties, transfer of a particular action often is necessary to further the expeditious resolution of the litigation taken as a whole.").

[12] *See* Pending MDL Dockets by District, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-March-15-2019.pdf.

[13] *See* Federal Court Management Statistics Report 2018, at 69, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2018.pdf.

- 12 -

1548221_1

The Southern District of California also has significant experience in managing multidistrict litigation and is highly qualified to handle this MDL. *See In re Janus Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (The Panel considers the potential transferee forum's experience in managing multidistrict litigation.). The Panel has recognized the Court's skill and efficiency by transferring numerous complex cases to the Southern District of California, including, for example, *In re Midland Credit Management, Inc., Telephone Consumer Protection Act (TCPA) Litig.*, No. 11-MD-02286 (S.D. Cal.); *In re Incretin-Based Therapies Products Liability Litig.*, No. 13-md-02452 (S.D. Cal.); *In re Packaged Seafood Products Antitrust Litig.*, No. 15-md-02670 (S.D. Cal.); *In re Jiffy Lube International, Inc., Text Spam Litig.*, No. 11-md-02261 (S.D. Cal.); *In re Sony Gaming Networks and Customer Data Security Breach Litig.*, No. 11-md-2258 (S.D. Cal.); *In re Musical Instruments and Equipment Antitrust Litig.*, No. 09-md-02121 (S.D. Cal.); and *In re California Wholesale Electricity Antitrust Litig.*, No. 02-cv-1993, MDL No. 1405 (S.D. Cal.).[14]

Also significant, no party disputes Judge Lorenz's record of efficient case management, available time to steer the Related Actions, and temperament to manage the cases in an efficient and expeditious manner. *See In re Brimonidine Patent Litig.*, 507 F. Supp. 2d 1381, 1382 (J.P.M.L. 2007) (Panel affords significant consideration to transferee judge's case management and available time); *In re Diet Drugs Prods. Liab. Litig.*, 990 F. Supp. 834, 836 (J.P.M.L. 1998) (same consideration of ability and temperament). Judge Lorenz has extensive experience handling complex and class-action litigation, having presided over a long list of such actions.[15] *See* ECF No. at 1-1.

---

[14] The fact that the Northern District of Illinois or the Eastern District of Pennsylvania may have more presently pending MDL's only illustrates the indisputable availability of the Southern District of California and Judge Lorenz to serve as the transferee court.

[15] In further support, the Southern District of California remains uniquely accessible and convenient given San Diego, California's well-developed support system for legal services and ample office space, and the fact that the San Diego International Airport is located a mere two miles

- 13 -

1548221_1

### III.  CONCLUSION

For the reasons set forth herein and in Movants' Motion, Movants respectfully request that the Panel centralize the Related Actions and any subsequently filed "tagalong" actions to the Southern District of California, for coordinated pretrial proceedings before the Honorable M. James Lorenz.

DATED:  March 29, 2019

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
DAVID W. MITCHELL
CARMEN A. MEDICI
ARTHUR L. SHINGLER III

s/ David W. Mitchell
DAVID W. MITCHELL

655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
davidm@rgrdlaw.com
cmedici@rgrdlaw.com
ashingler@rgrdlaw.com

ROBBINS ARROYO LLP
BRIAN J. ROBBINS
GEORGE C. AGUILAR
JENNY L. DIXON
ERIC M. CARRINO
5040 Shoreham Place
San Diego, CA  92122
Telephone:  619/525-3990
619/525-3991 (fax)
brobbins@robbinsarroyo.com
gaguilar@robbinsarroyo.com
jdixon@robbinsarroyo.com
ecarrino@robbinsarroyo.com

---

from the Southern District of California courthouse. *See In re WorldCom, Inc., Sec. & ERISA Litig.*, 226 F. Supp. 2d 1352, 1355 (J.P.M.L. 2002).

- 14 -

1548221_1

Counsel for Plaintiffs Steve Mannis, M.D.,
Tonianne French, M.D. and Louis Lim, M.D.
No. 3:19-cv-00341 (S.D. Cal.)