IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMILY ELIZABETH LAZAROU and AAFAQUE AKHTER<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY,<br><br>Defendant. | Case No.: 1-19-cv-01614<br><br>Honorable John Z. Lee |

**REPLY BRIEF OF DEFENDANT IN SUPPORT OF ITS MOTION TO DISMISS PLANTIFFS' CLASS ACTION COMPLAINT**

Defendant American Board of Psychiatry and Neurology ("ABPN") respectfully submits this Reply Brief in Support of its Motion to Dismiss Plaintiffs' Class Action Complaint ("*Cmplt*.").

## ARGUMENT

A complaint must always allege "enough facts" to state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). How many facts are sufficient depends on the type of case. In antitrust cases a fuller set of **factual allegations** may be necessary to survive a motion to dismiss. *Limestone Dev. Corp. v. Village of Lemont,* 520 F.3d 797, 803–804 (7th Cir. 2008) (internal citations omitted); *see also Alarm Detection Sys., Inc. v. Village of Schaumburg*, 2018 WL 4679559, at *6 (N.D. Ill. 2018), *appeal docketed*, No. 18-3316 (7th Cir. Oct. 26, 2018) (same); *International Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F.Supp.3d 725, 730 (N.D. Ill. 2018) (same). Accordingly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements **do not suffice**." *Limestone Dev. Corp.,* 520 F.3d at 803 (emphasis added). Ultimately, a complaint must contain "more than labels and conclusions", the later of

which need not be accepted by this Court as true. *Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

In their Opposition, Plaintiffs attempt to dodge this pleading requirement by citations to a fusillade of non-fact-based allegations, conclusory statements and labels. In essence, Plaintiffs repeatedly aver 'it's true because we say it's true,' except when it comes to defending their unjust enrichment claim where, instead, Plaintiffs' defense is 'it's not necessarily true (or false) because we have not specifically stated whether a contract exists or does not exist.' Plaintiffs' complaint falls well short of the necessary set of factual allegations to survive a motion to dismiss and their opposition does little, if anything, to save their defective complaint.

**I.     THE RULE OF REASON APPLIES HERE.**

The Rule of Reason, as opposed to the *per se* rule, applies to this motion to dismiss for two reasons: 1) all vertical arrangements, as here with the ABPN's IC and MOC, are judged under the rule of reason. *In re Sulfuric Acid Antitrust Litig.*, 743 F.Supp.2d 827, 867 (N.D. Ill. 2010) (citing *Leegin Creative Leather Products, Inc. v. PSKS, Inc.,* 551 U.S. 877, 899 (2007) and *Continental T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 58)[1]; and 2) where, as here, an antitrust case involves professional or educational standards, the "rule of reason" applies. *Sherman Coll. of Straight Chiropractic v. American Chiropractic Ass'n, Inc.*, 654 F.Supp. 716, 722 (N.D. Ga. 1986) (citing *National Soc'y of Prof'l Eng'r v. United States,* 435 U.S. 679, 696 (1978); *see also BCB Anesthesia Care Ltd. v. Passavant Mem. Area Hosp. Ass'n,* 36 F.3d 664, 667 (7th Cir. 1994).

Plaintiffs' cases to the contrary are all inapposite. *In re Sulfuric Acid Antitrust Litig.* did not involve professional or educational standards but did involve horizontal restraints. 743

---

[1] An arrangement 'horizontal' only when its participants are actual or potential rivals at the time the agreement is made. *In re Sulfuric Acid Antitrust Litigation*, 743 F.Supp.2d at 867.

2

F.Supp.2d at 874. Likewise, both *Arizona v. Maricopa County Med. Soc.* and *Talone v. American Osteopathic Ass'n* involved horizontal, not vertical, restraints. 457 U.S. 332, 348-49 (1982); 2017 WL 2539394, at *4 (D.N.J., 2017), respectively.[2]

## II. PLAINTIFFS' COMPLAINT FAILS BECAUSE THERE IS ONLY ONE PRODUCT AT ISSUE.

*First*, as Plaintiffs correctly point out: "separateness can be satisfied by evidence that the two products have been 'sold separately in the past and still are sold separately.'" *Plts'. Opp.*, p. 7 (citing *Eastman Kodak Co. v. Image Technical Services, Inc.*, 504 U.S. 451, 462 (1992) and *Viamedia, Inc. v. Comcast Corp.*, 218 F.Supp.3d 674, 693 (N.D. Ill. 2016). This standard is important because it goes to the heart of the "consumer demand test", whereby a court looks to the independent character of the demand for the two items. *Viamedia*, 218 F.Supp.3d at 693. Which begs the question: When exactly was MOC sold separately from IC? Despite contending that "Plaintiffs have alleged exactly that"[3], an examination of the actual allegations in the complaint demonstrates otherwise, for example:

> "¶ 22. In or about 1994, however, ABPN announced it would no longer issue lifelong initial certifications. Instead, it would issue ten-year certificates and require participation in a new maintenance of certification program, which ABPN called its 10-Year MOC Program…."

In other words, far from ever being sold separately, MOC has always been sold as a component of time-limited certification – a single product.

*Second*, as the ABPN stated in its opening brief, other than offering a myriad of labels and legal conclusions, Plaintiffs allege ***only two*** factual matters supporting the theory of two separate

---

[2] The *Talone* case involved the alleged tying of a professional association membership to board certification and while the entities were under common ownership, they were still distinct legal entities, whereas here it is one board certification product by one distinct legal entity – the ABPN. *See* 2017 WL 2539394, at *3-4.

[3] *Plts'. Opp.*, pp. 7-8.

3

products: 1) the pedestrian point that in the past the ABPN offered time-unlimited certificates but for the last twenty-five years has been offering time-limited certificates; and 2) that the National Board of Physicians and Surgeons ("NBPAS"), a competing seller of a maintenance of certification product, does not sell initial certifications. *Plts'. Opp.*, p. 9; *Cmplt*. at ¶¶ 75-77. On this second point, the ABPN has already demonstrated this assertion to be false in its opening brief. Undeterred, Plaintiffs double-down by again falsely stating the NBPAS does not offer certification stating, "some hospitals (though less than 1 percent) **recognize NPBAS** [sic] **maintenance of certification** product as maintenance of ABPN initial certification." *Plts' Opp.*, p. 9 (citing *Cmplt.*, ¶ 78) (emphasis added). When in fact, what the NBPAS states on its own website is:

> "For hospitals, NBPAS acceptance usually means the hospital's Board of Directors **will accept NBPAS certification instead of ABMS member board (or AOA) certification** for hospital privileges."

https://nbpas.org/faqs/ (emphasis added).[4]  A fact also admitted to by Plaintiff Lazarou in the Complaint. *See Cmplt.,* ¶ 94 ("… She [Dr. Lazarou] currently holds **NBPAS certifications** in psychiatry and forensic psychiatry.") (emphasis added). Again, the import is not whether NBPAS offers IC, but that even the NBPAS consider IC and MOC to be one product – that is, continued and current certification.

*Third*, it is of no moment that ABPN allegedly charges separately for IC and MOC. Namely because, as argued throughout this section, there is only one product. The yearly charges '*for* MOC' are no different than the yearly charges to keep your law license, it is all one product – the license to practice law. Moreover, the emphasis is on consumer demand *i.e.*, "no tying arrangement can exist unless there is a distinct demand for the purchase of [the two different products]" and "this demand must be sufficient to identify a distinct product market in which it is

---

[4] ABPN has previously moved Requesting Judicial Notice of NBPAS' Website. Dkt. 24.

efficient to offer [the products separately]." *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 477 (7th Cir.1988). There is no market for maintaining board certification without having board certification, hence one product and no tying. *See Casey v. Diet Ctr., Inc.*, 590 F.Supp. 1561, 1564 (N.D. Cal. 1984); *Subsolutions, Inc. v. Doctor's Associates, Inc.*, 436 F.Supp.2d 348, 354 (D. Conn. 2006).

*Fifth*, Plaintiffs misunderstand the point that both named Plaintiffs were aware of the MOC component of board certification when they signed their application for IC. It is not a consent affirmative defense, but rather the fact that both named Plaintiffs knew the nature of the single product they were purchasing when they applied and entered into a contract with the ABPN.

*Sixth*, the fact that ABPN previously had lifetime certificate holders who are not required to participate in MOC does not "confirm[] that MOC and initial certification are separate" as Plaintiffs argue on page 9 of their Opposition. To the contrary, and as Plaintiffs too admit on page 2 of their Opposition:

> "The only exception to ABPN's MOC requirement is that doctors who purchased initial certifications before 1990 are 'grandfathered' by ABPN, not required to buy MOC, and still reported as 'Certified' by ABPN."

In other words, there is absolutely no distinction between those who were "grandfathered" in and those time-limited certificate holders who are required to participate in MOC – each is reported as "Certified" by the ABPN.

### III. PLAINTIFFS HAVE FAILED TO SUFFICIENTLY PLEAD "FORCE", "UNREASONABLE RESTRAINT OF TRADE" OR MARKET POWER".

Force, unreasonable restraints of trade and market power must be alleged in more than conclusory terms to survive a Rule 12(b)(6) motion. *Limestone Dev. Corp.,* 520 F.3d at 803–804.

5

With respect to force, Plaintiffs first misquote ABPN's opening brief; Plaintiffs state that the "ABPN calls MOC 'completely voluntary and optional.'" *Plts'. Opp.*, p. 13. What ABPN actually stated was:

> "Regardless, nobody is forcing physicians **to be board certified as it is completely voluntary and optional**. Likewise, participation in MOC is completely up to each individual physician with the consequence of the physicians not maintaining his/her certification status if they do not comply with the MOC within the allotted timeframe – something that they knew when applying for IC. *See Id.*, at ¶¶ 22, 94, 104." (emphasis added).

The only other allegation of force is that "many" hospitals, insurers and industry related companies require physicians to be board certified. *Plts'. Opp.*, p. 14. ABPN debunked this unsupported conclusion in its opening brief. Moreover, Plaintiffs themselves debunk this conclusory statement in their Opposition:

- "… Plaintiffs do not allege illegal forcing or tying on the part of hospitals, insurers, or other non-parties, nor do they allege ABPN has combined or conspired with any such persons or entities in violation of the antitrust laws." *Id.*, at p.14, n.13.

- "Plaintiffs do not allege restraint of trade as 'the result of independent third-party decision-making and action' such as by 'hospitals, insurers, etc.'" *Id.*, at p.15, n.14.

With respect to pleading a sufficient factual basis for an unreasonable restraint of trade, Plaintiffs recite a single conclusory paragraph of their complaint with no facts, evidence or data to back up their conclusions. *Id.*, at p.15

Finally, with respect to market power, Plaintiffs offer nothing more than labels, legal conclusions and boilerplate – *e.g.*, "ABPN's conduct, including but not limited to tying and exclusive dealing, has harmed competition by preventing competition from others providing cheaper, less burdensome, and more innovative forms of maintenance of certification desired by psychiatrists and neurologists." *Cmplt.*, ¶ 2. All insufficient to survive a motion to dismiss. *Foundation for Interior Design Educ. Research v. Savannah College of Art and Design*, 73

F.Supp.2d 829, 837 (W.D. Mich.1999) ("Market power must be alleged in more than vague and conclusory terms to prevent the dismissal of the complaint on a Rule 12(b)(6) motion.").

IV. **THE STATUTE OF LIMITATIONS UNEQUIVOCALLY BARS PLAINTIFFS' COMPLAINT.**

Plaintiffs mistakenly state that the discovery rule does not apply; they are wrong. The Seventh Circuit has repeatedly held that "antitrust actions are subject to the 'discovery rule, which 'postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured.'" *In re Sulfuric Acid Antitrust Litig.*, 743 F.Supp.2d at 854 (quoting *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) which in turn quoted *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990)). Apparently, Plaintiffs are not arguing against the application of the discovery rule, but – do to continuing overt acts – when the discovery period begins to run.

Thus, although continuing violations may restart the antitrust statute of limitations, there must be a "new and independent act that is not merely a reaffirmation of a previous act," and "it must inflict new and accumulating injury on the plaintiff." *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237, 238 (9th Cir. 1987).

Plaintiffs further admit the relevant statute of limitations period for the antitrust claims is four years, and they must allege "overt acts by defendant within the four-year limitations period" to toll the limitations period. *Plts' Opp.*, p. 18. Citing to Paragraphs 40 and 41 of the Complaint, Plaintiffs argue, *ipse dixit*, that the statute of limitations has not expired because ABPM has engaged in "overt acts" within the four-year limitations period. *See Id*. However, Plaintiffs fail to acknowledge the legal requirements to make a showing of "overt acts" that toll a statute of limitations, and fail to present any analysis as to how the alleged "overt acts" referred to in Paragraphs 40 and 41 of their Complaint meet those requirements.

7

"An overt act has two elements: (1) it must be a new and independent act that is not merely a reaffirmation of a previous act, and (2) it must inflict new and accumulating injury on the Plaintiff." *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004) (citing *Pace Indus., Inc.*, 813 F.2d at 238); *Witt Co. v. Riso, Inc.*, 948 F.Supp.2d 1227, 1236 (D. Ore. 2013) (same). Plaintiffs fail to cite any activity undertaken by the ABPN that meets these requirements. Paragraph 41 discusses a current Pilot Project currently being implemented as "an alternative to the ten-year cognitive MOC examination, **limited just to those physicians whose time-limited certifications expire between 2019 and 2021**." *See Cmplt.* at ¶ 41 (emphasis added). Plaintiffs' certifications do not expire between 2019 and 2021. Nor can Plaintiffs prove any harm from an "alternative program," which by definition does not add requirements, but is an "alternative" to, the current maintenance of certification requirements Plaintiffs agreed to follow years before the statute of limitations period began.

Paragraph 40 addresses a "patient safety activity" requirement for "maintenance of certification." Plaintiffs fail to identify what this requirement is, how it qualifies as a "new and independent act" distinct from the maintenance of certification requirements in place long before the statute of limitations period, or how they suffered a new injury from the alleged patient safety requirement. To the contrary, although Plaintiffs allege that the patient safety requirement may or may not meet the goals of the maintenance of certification program, Plaintiffs expressly acknowledge that the patient safety activity is part of the current maintenance of certification program. *See Cmplt.* at ¶ 40. Accordingly, Plaintiffs fail to allege any new injury from the patient safety requirement, separate and apart from the same injury allegedly suffered from the same maintenance of certification program in place long before the limitations period started. *See Varner*, 371 F.3d at 1020 ("when a complaining party was fully aware of the terms of an agreement

8

when it entered into the agreement, an injury occurs only when the agreement is initially imposed; thus, the limitations period typically is not tolled by the requirements placed on the parties under the agreement"); *Eichman v. Fotomat Corp.,* 880 F.2d 149, 160 (9th Cir.1989) (statute of limitations barred tying claim when lease contract containing alleged illegal tying provision was entered into outside the limitations period); *Aurora Enters., Inc. v. Nat'l Broad. Co.,* 688 F.2d 689, 693 (9th Cir 1982) (statute of limitations barred plaintiff's claim because the contract containing the alleged illegal tying provision was entered into more than four years before the complaint was filed); *Witt*, 948 F.Supp.2d at 1236 (for statute of limitations periods purposes, any allegedly illegal tying provision begins when it is put in place, not on subsequent enforcements of those tying requirements). Therefore, the facts asserted in Paragraph 40 do not qualify as overt acts that toll the limitations period, and Plaintiffs' Complaint should be dismissed as untimely.

**V.    THE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED.**

In hopes of avoiding dismissal of their unjust enrichment claim, Plaintiffs essentially argue that dismissal should be denied because they do not use the magic word "contract" in their Complaint, asserting that they "plead neither the existence nor breach of a contract." Plaintiffs' Opposition at 20. Plaintiffs also argue that even if there is a contract, their claim falls outside the scope of that contract. By making these arguments, Plaintiffs appear to assert that their unjust enrichment claim is "tied" to their anti-trust claims. For a number of reasons, Plaintiffs' arguments are insufficient to avoid dismissal of their unjust enrichment claim.

First, as this Court has previously held, "[u]njust enrichment is not an independent cause of action. Rather it is a remedy for unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law." *Elward v. Electrolux Home Products, Inc.*, 214 F. Supp. 3d 701, 708 (N.D. Ill. 2016) (Lee,

9

J) (citation omitted). *See also Toulon v. Continental Casualty Co.,* 877 F.3d 725, 741 (7th Cir. 2017) ("Unjust enrichment does not constitute an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law") (quoting *Saletech, LLC v. East Balt, Inc.*, 386 Ill. Dec. 420, 20 N.E.3d 796, 808 (1st Dist. 2014).

Second, to the extent Plaintiffs' unjust enrichment claim is tied to their antitrust claims, dismissal is appropriate for the same reasons that the antitrust claims fail. *See, e.g., Maxwell v. Sanofi-Aventis U.S. LLC*, Case No. 15-cv-10095, 2016 WL 363321, *4 (N.D. Ill. July 6, 2016) ("[I]f an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim and, of course, unjust enrichment will stand or fall with the related claim.") (quoting *Cleary v. Philip Morris Inc*., 656 F.3d 511, 517 (7th Cir. 2011)). *See also Philips v. Double Down Interactive LLC,* 173 F. Supp. 3d 731, 744 (N.D. Ill. 2016) (same); *Ibarrola v. Kind LLC,* 83 F. Supp. 3d 751, 761 (N.D. Ill. 2015) ("a claim for unjust enrichment cannot stand on its own in light of the Court's dismissal of Ibarrola's fraud and express warranty claims").

Third, Plaintiffs cannot avoid dismissal simply because they do not use the word "contract" in their Complaint. On the contrary, Plaintiffs' allegations make it clear that a binding contract exists between the parties.[5] For example, in paragraphs 3, 9, 19, 37, and 70 of their

---

[5] Plaintiffs' erroneously assert that ABPN argued in its opening memorandum that a written contract governs the parties' relationship. Although ABPN simply argued that the parties' relationship is governed by a contract, APBM did not specify that the contract at issue is a written contract. However, as Plaintiffs are fully aware, a written contract in fact exists between the parties. Indeed, when they first sought to obtain their initial certifications, both Plaintiffs filled out and signed an Application for Certification. Although ABPN believes the Court could properly consider those applications in connection with this motion to dismiss, for reasons

Complaint, Plaintiffs specifically allege that ABPN "sells" initial certifications and MOC. Similarly, Plaintiffs specifically allege in their Complaint that physicians, including themselves, "purchase" initial certifications and MOC from ABPN. *See, e.g., Cmplt.*, ¶¶ 3-6, 9, 18, 25, 30, 48, 55, 99, 104, 111.[6] This is all that is necessary to establish the existence of a contractual relationship. *See, e.g., The Chicago Faucet Shoppe, Inc. v. Nestle Waters North America, Inc.*, 24 F. Supp. 3d 750, 764 (N.D. Ill. 2014) (the Court declined to consider the contract documents defendant submitted in support of it motion to dismiss, but found such consideration to be unnecessary, stating "Here, there is no dispute that Chicago Faucet placed a telephone order for the five-gallon bottled water, and that the defendant delivered the goods, which the plaintiff accepted and consumed, and billed plaintiff with monthly invoices. . . This course of conduct is sufficient to show agreement. . . Even if the Court disregards Exhibit C, then, it is still clear from the parties' conduct as described in the complaint alone that there was a contractual relationship governing the sale of goods—the precise terms of which are not relevant at this point").

"Consequently, a contract precludes application of quantum meruit because (1) a contract provides a remedy at law, and (2) as a remnant of chancery procedure, a plaintiff may not pursue an equitable remedy when there is a remedy at law.") *Jasper v. Abbott Laboratories, Inc.,*, 834 F. Supp. 2d 766, 774 (N.D. Ill. 2011) (quoting *King v. Terry*, 805 N.E.2d 397, 400 (Ind.Ct.App.2004). As the Seventh Circuit Court of Appeals has stated,

---

discussed herein such consideration is not necessary in order for the Court to dismiss Plaintiffs' claim for unjust enrichment. Accordingly, ABPN does not submit copies of those applications, or the other contract documents, with this memorandum.

[6] Indeed, Plaintiffs' entire Complaint hinges on a contractual relationship between the parties – i.e., ABPN sold, and Plaintiffs' purchased, initial certifications and MOC. The money Plaintiffs paid, pursuant to their contract, is the money Plaintiffs now hope to recoup through their unjust enrichment claim.

> [i]n Illinois recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and defendant. *Guinn v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 296 Ill.Dec. 930, 836 N.E.2d 681, 704 (2005); *Nesby v. Country Mut. Ins. Co.*, 346 Ill.App.3d 564, 281 Ill.Dec. 873, 805 N.E.2d 241, 243 (2004) ("Where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application."). There are two related reasons for this rule. First, "[t]he theory of unjust enrichment is an equitable remedy based upon a contract implied in law." *Nesby*, 281 Ill.Dec. 873, 805 N.E.2d at 243. If an express contract exists to govern the parties' conduct, then there is no room for an implied contract. Second, "[b]ecause it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Id*. The first reason may be regarded as a specific application of the second reason—no implied contract can exist where an express one governs because no equitable remedy can lie where a legal one is available.

*Cohen v. American Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *see also Toulon*, 877 F.3d at 741-42 (complaint "failed to state a claim for unjust enrichment because . . . there is an actual contract governing the parties' relationship so one cannot be implied in law")

Finally, as to Plaintiffs' assertion that their unjust enrichment claim falls outside the parties' contract, Plaintiffs offer no explanation in support of that argument. Accordingly, Plaintiffs' naked assertion on this point is insufficient to avoid dismissal. *See Feigl v. Ecolab, Inc.*, 280 F. Supp. 2d 846, 850 (N.D. Ill. 2003) ("court need not consider the argument" which "Plaintiffs fail to develop").

## CONCLUSION

For the above reasons, the Complaint should be dismissed in its entirety and with prejudice for failure to state a claim upon which relief can be granted.

Dated: June 21, 2019

Respectfully submitted,

By: /s/ *Christopher Sullivan*
Christopher B. Sullivan
PRICE PARKINSON & KERR

12

        5742 West Harold Gatty Drive
        Salt Lake City, Utah 84116
        Tel: (801) 517-7009
        Sullivan@ppktrial.com

        Anne I-Pin Shaw
        Darryl Tom
        SHAW LEGAL SERVICES, LTD.
        540 W. Briar Place, Unit B
        Chicago, Illinois 60657
        ashaw@shawattorneys.com
        dtom@shawattorneys.com

        *Attorneys for Defendant American Board of Psychiatry and Neurology*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 21, 2019, the foregoing **REPLY BRIEF OF DEFENDANT IN SUPPORT OF ITS MOTION TO DISMISS PLANTIFFS' CLASS ACTION COMPLAINT** was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing by email to the following:

C. Philip Curley
Cynthia H. Hyndman
Laura R. Feldman
Benjamin E. Schwab
ROBINSON CURLEY P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL 60606
pcurley@robinsoncurley.com
chyndman@robinsoncurley.com
lfeldman@robinsoncurley.com
bschwab@robinsoncurley.com

Katrina Carroll
Carlson Lynch LLP
111 West Washington Street
Suite 1240
Chicago, IL 60602
kcarroll@carlsonlynch.com

                                         */s/ Christopher Sullivan*
                                              Christopher Sullivan