IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMILY ELIZABETH LAZAROU and AAFAQUE AKHTER, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY,<br><br>Defendant. | No. 1:19-cv-01614<br><br>Hon. Martha M. Pacold |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Defendant American Board of Psychiatry and Neurology ("ABPN") illegally ties its initial certification product, which it sells to new doctors to demonstrate completion of their medical education and assess the quality of their residency program, and its MOC product, which it requires some older doctors, but not all, to purchase throughout their careers to demonstrate lifetime learning or forfeit their initial certification. ABPN brings to the court's attention *Kenney v. American Board of Internal Medicine*, No. 18-5260, 2019 U.S. Dist. LEXIS 164725 (E.D. Pa. Sept. 26, 2019) ("*Kenney*"), and *Siva v. American Board of Radiology*, No. 19 C 1407, 2019 U.S. Dist. LEXIS 200645 (N.D. Ill. Nov. 19, 2019) ("*Siva*"). *Kenney* came first, followed by *Siva* which "agree[d] with the reasoning in *Kenney*." *Id.* at *11. [1]

Nothing in those opinions changes ABPN's unlawful conduct. A critical reading of the opinions and application of the universally accepted rule that well-pleaded factual allegations and

---

[1] The tying claims in *Kenney* were dismissed with prejudice without plaintiffs being allowed to amend, the court finding as a matter of law that separate products could never be alleged. Plaintiffs are appealing that ruling. The claims in *Siva* were dismissed without prejudice and plaintiff is filing an amended complaint on January 10, 2020.

1

all reasonable inferences therefrom must be taken as true compels the conclusion that *Kenney* and *Siva* were, respectfully, wrongly decided. Both rely heavily on *Kaufman v. Time Warner*, 836 F. 3d 137 (2nd Cir. 2016), which had not been cited by any of the parties in either case. *Kaufman* upheld dismissal of the *fourth* attempt to state a claim for tying set-top cable boxes and cable services due to the failure to allege separate demand. The plaintiff instead alleged "supply-side considerations," referred to markets outside of the United States, and made a failed analogy to internet services. *Id.* at 144-45. The Second Circuit was also persuaded by the market role played by the FCC, noting most importantly that regulatory price controls on the tied product made the tying claim "implausible as a whole." *Id.* at 145-47. [2]

Unlike the plaintiff in *Kaufman*, Plaintiffs here make numerous well-pleaded factual allegations supporting separate product demand, including: [3]

- Certification and MOC have been "sold separately in the past and still are sold separately." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 462 (1992) -- ¶¶19, 22, 67, 70 (ABPN first sold certifications in 1935 and did not begin selling MOC until 2002); ¶¶22, 31, 59 (MOC still sold separately after purchase of initial certifications); ¶¶25-28, 54 (doctors "grandfathered" by ABPN not required to purchase MOC). *See also Viamedia, Inc. v. Comcast Corp.*, 218 F. Supp. 3d 674, 693 (N.D. Ill. 2016).

- Other sellers of the tied product do so without selling the tying product. *See Eastman Kodak*, 504 U.S. at 462; *Viamedia*, 218 F. Supp. 3d at 693-94 -- ¶¶75-77 (NBPAS, a competing seller of lifetime learning products, does not sell an initial certification product).

- Consumers "differentiate between" the tied and tying products. *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 22 (1984) -- ¶¶73, 84 (psychiatrists and neurologists do not want to buy MOC or would prefer to purchase lifelong learning products from other providers such as NPBAS); ¶¶75-77 (NPBAS sells only the tied product, reflecting differentiation by both another market participant and consumers); ¶78 (despite ABPN's anticompetitive conduct, some hospitals (though less than 1%) recognize NPBAS' product as demonstrating lifetime learning sufficient for maintaining certification). *See also Viamedia*, 218 F. Supp. 3d at 694.

---

[2] A tie can either be "expressly instituted or effectively applied." *Viamedia, Inc. v. Comcast Corp.*, 335 F. Supp. 3d 1036, 1057 (N.D. Ill. 2018). ABPN argues it has not expressly instituted a tie, creating an issue of fact. Plaintiffs' allegations also support a claim that ABPN has "effectively applied" a tie.

[3] References to "¶ ____" are to paragraphs of the Class Action Complaint at Dkt. 1.

- "Grandfathering" confirms that ABPN also differentiates between the two products -- ¶¶26-28 (if there were a single product ABPN would not have freed half of psychiatrists and neurologists who have bought initial certification from buying MOC).
- Certification and MOC "have different purposes" -- ¶¶23, 71.
- The tying seller charges separately for the tied product. *Jefferson Parish*, 466 U.S. at 22 -- ¶¶ 22, 31, 59, 67, 82, 83, 94, 103 (ABPN charges for MOC separately).

Also unlike *Kaufman,* there is no FCC-type regulatory environment here which the Second Circuit relied upon in holding that the tying claim there "was implausible as a whole." [4]

While *Kenney* and *Siva* referred to some of the allegations of separate demand made by plaintiffs in those cases, they did not take those allegations as true. Instead, they accepted the defendants' interpretation that, as a matter of law, there could only be one product, *viz.*, certification. Thus, *Kenney* "disagree[d]" with and gave "very little weight" to plaintiffs' factual allegations of separate demand in order to "find" a single product. 2019 U.S. District LEXIS 164725 at *35, *37. Similarly, S*iva* accepted the defendant's argument that "it sells only one product: certification, of which MOC is a part" in deciding that it was not "convinced" there were separate products. 2019 U.S. District LEXIS 200645 at * 8, *9. [5] *Kenney* and *Siva* simply adopted the defendants' view of the world, thus arrogating to themselves the role of finder of fact. [6]

---

[4] Another district court that has applied *Kaufman* to a tying claim, *Angio Dynamics, Inc. v. C.R. Bard*, No. 1:17-cv-00598, 2018 U.S. Dist. LEXIS 131206, *19-23 (N.D. N.Y. August 6, 2018), denied a motion to dismiss citing allegations like those here that consumers had purchased the two products separately (catheters and tip location systems that aid in placement of the catheters). The court accordingly found that plaintiff had "sufficiently pled the element of separate products."

[5] A similar argument made on a motion to dismiss in the single-serve coffee litigation, that the coffee pods are simply "aftermarkets" sold for use with the primary product (single serve brewers), was recently rejected. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 228, fn. 24 (S.D.N.Y. 2019) ("For purposes of the current motion [to dismiss], it suffices that the [plaintiffs] have plausibly alleged both [markets], discovery will illuminate which market is appropriate in which to analyze the alleged anticompetitive conduct.") (citation omitted).

[6] *Siva* also relied on *Kentmaster Manufacturing Company v. Jarvis Products Corp.*, 146 F. 3d 691 (9th Cir. 1998), another case that had not been cited or relied upon by any of the parties in either *Kenney* or *Siva*. That case involved predatory pricing and not tying, plaintiff's pricing allegations conceded a single

3

*Kenney* and *Siva* also relied heavily on a franchise analogy advocated by the defendants. In doing so, they accepted defendants' outside-the-record assertions in support of their analogy. For example, while *Kenney* credited defendant's contention that other suppliers of lifetime learning products would lead to "hospitals, insurance companies, and patients [losing] faith in the ABIM certification process," 2019 U.S. District LEXIS 164725 at *37, n. 2, and *Siva* accepted the defendant's argument that it was selling doctors "essentially an endorsement based on a formula including all that it entails," 2019 U.S. District LEXIS 200645 at *14 (internal quotation marks and citation omitted), no such allegations were made in either case. In fact, as here, plaintiffs in those cases alleged the opposite—that the driving force behind MOC is not to enhance or establish any ABPN "standard" but the substantial revenue it generates (*e.g.,* ¶¶4, 59, 82), and that years of studies and evidence show no causal relationship between MOC and any benefits to physicians, patients, or the public (*e.g.,* ¶¶54, 57). APBN is free to dispute these allegations later at the appropriate time; they must, however, be taken as true at this stage of the proceedings. [7]

The franchise analogy also fails on the facts: doctors are not licensing a product from ABPN, nor are they purchasing a uniform method of doing business (here, the practice of medicine, as opposed to selling prefabricated buildings, diet pills, or ice cream). And the economic arguments that might justify a franchisor's tying do not apply here. There are at best minimal efficiencies from having a monopoly supplier of both initial certification and MOC, and any such efficiency is

---

product, there was no allegation or discussion of separate demand, and no antitrust injury was alleged. And unlike here it *was* possible to determine life cycle costs for the replacement parts. *See* ¶86 (because of ABPN's repeated changes to MOC, it is "impossible to calculate the life cycle cost.").

[7] Defendants in *Kenney* and *Siva* also claimed, as ABPN does here, that they would be forced to accept NBPAS's product as satisfaction of their own requirements for initial certification if plaintiffs were to prevail. Nowhere does any plaintiff seek such relief, precisely because two separate products exist.

outweighed by the efficiency losses from not having robust competition to provide alternatives to ABPN's lifetime learning product. Finally, the franchise analogy raises a myriad of factual issues, including the benefits of MOC asserted by defendants and their intent in implementing MOC, not properly resolved on a Rule 12 (b)(6) motion.

It is not the plaintiff's task on a Rule 12(b)(6) motion to convince the court that it will ultimately prevail. Nor is it the court's task to weigh or find facts. *See Dejbo Sales*, No. 14-4657, ECF Dkt. No. 73, pp. 2-3 (D.N.J. Jan. 28, 2016) (refusing defendant's invitation to rule as a matter of law on a motion to dismiss that the two products (textbooks and delivery of the textbooks) "can never be the subject of a tying claim.") (Exhibit 1 hereto). Defendants' arguments in *Kenney* and *Siva*, like ABPN's arguments here, far from being dispositive show there is a factual dispute whether separate products exist, which is why there is discovery and trials. *See In re Cox Enters.*, No. 12-MDL-2048-C, U.S. 2014 Dist. LEXIS 91331, *11) (W.D. Okla. July 3, 2014) (denying summary judgment on a tying claim despite defendant's evidentiary inferences: "Defendant's arguments … demonstrate only the existence of a material factual dispute.").

The Second Circuit has recently reaffirmed that consumer demand is the principal factor in determining an appropriate market. *US Airways, Inc. v. Sabre Holdings Corporation*, 938 F. 3d 43 (2nd Cir. 2019), reversed dismissal of a monopolization claim, finding a single brand of a product had been adequately alleged as a relevant market. In doing so, it noted that market definition "is a deeply fact-intensive inquiry" and courts "hesitate to grant motions to dismiss for failure to plead a market." 938 F. 3d at 64 (internal quotation marks and citation omitted). [8]

---

[8] The Eleventh Circuit also recently affirmed (on other grounds) a district court's denial of a motion to dismiss a tying claim. *Diverse Power, Inc. v. City of LaGrange*, 934 F. 3d 1270 (11th Cir. 2019). The district court in that case in denying the motion to dismiss, had held that "[a]t this stage" it need not decide what the relevant product market *is*, but only whether plaintiff "has adequately alleged its definition." *Diverse Power, Inc. v. City of Lagrange*, No. 3:17-cv-3-TCB, 2018 U.S. Dist. LEXIS 226681, *15, *16, n. 1 (N.D. Ga. Feb. 21, 2018).

                                              Respectfully submitted,

Dated: December 11, 2019                /s/ C. Philip Curley

                                              ***Counsel for Plaintiffs Emily Elizabeth Lazarou and Aafaque Akhter, individually and on behalf of all others similarly situated***

                                              C. Philip Curley
                                            Cynthia H. Hyndman
                                            Laura R. Feldman
                                            Benjamin E. Schwab
                                            ROBINSON CURLEY P.C.
                                            300 South Wacker Drive, Suite 1700
                                            Chicago, IL 60606
                                            pcurley@robinsoncurley.com
                                            chyndman@robinsoncurley.com
                                            lfeldman@robinsoncurley.com
                                            bschwab@robinsoncurley.com
                                            Tel: 312.663.3100
                                            Fax: 312.663.0303

                                            Katrina Carroll
                                            CARLSON LYNCH LLP
                                            111 West Washington, Suite 1240
                                            Chicago, IL 60602
                                            kcarroll@carlsonlynch.com
                                            Tel: 312.750.1265
                                            Fax: 312.212.5919