# Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
MADELINE COX ARLEO
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING
COURTHOUSE
50 WALNUT ST. ROOM 2060
NEWARK, NJ 07101
917-297-4903

January 28, 2016

VIA ECF

**LETTER ORDER**

Re: **Debjo Sales, LLC v. Houghton Mifflin Harcourt Publishing Corp.
Civil Action No. 14-04657**

Dear Litigants:

This matter comes before the Court by way of Defendant Houghton Mifflin Harcourt Publishing Company's ("Defendant") Motion to Dismiss Plaintiff Debjo Sales, LLC's ("Plaintiff") Second Amended Complaint. Dkt. No. 69. The Court previously dismissed all claims without prejudice. Because Plaintiff's Second Amended Complaint remedies the earlier pleading defects, Defendant's motion is **DENIED**.

**I. Newly-Alleged Facts**

The facts and legal standards as laid out in this Court's earlier opinion are incorporated herein. See Debjo Sales, LLC v. Houghton Mifflin Harcourt Publ'g Co., No. 14-4657, 2015 WL 1969380, at *2-*9 (D.N.J. Apr. 29, 2015). The Court will only discuss the new facts alleged in Plaintiff's Second Amended Complaint.

In New Jersey, purchases of over $17,500 made by schools, including delivery of textbooks, are subject to public bidding laws. Second Am. Compl. at 2 ¶ 4, Dkt. No. 64. Educational Data Services ("EDS") is a consortium of 388 school districts in New Jersey and 108 school districts in New York which solicits and awards bids for the school districts. Among the services solicited by EDS is "textbook freight consolidation." Id. EDS may pre-approve service providers, permitting school districts to enter contracts with them without having to conduct a public bid. Id. Plaintiff was pre-approved by EDS for textbook delivery. Id. at 2 ¶ 5.

School districts purchase K-12 school textbooks in bulk. Id. at 5 ¶ 2. All national textbook publishers Plaintiff services treat purchase and delivery of textbooks differently. Id. From 2009 to 2014, Plaintiff shipped textbooks for over 100 school districts in New Jersey for a total of about 400 purchase orders. Id. at 6 ¶ 3. The total value of K-12 textbook purchase orders picked up and delivered by Plaintiff from Defendant between 2009 and 2014 was about $8,500,000. These contracts span school districts in New Jersey, New York, and Maryland. Id. at 9 ¶ 11.

1

School districts forwarded purchase orders to Defendant and Plaintiff with an endorsement that specifically directs Defendant to have the order available for pick-up by Plaintiff. Id. at 3 ¶ 7; 5 ¶ 2. In summer 2014, nineteen school districts had contracted with Plaintiff to deliver fifty-nine purchase orders from Defendant to their districts. Id. at 4 ¶ 9. Combined, these orders were worth $866,266.08. Id. Defendant's policy change and subsequent conduct allegedly caused these orders to be shipped by Defendant instead. Id. As a result, Plaintiff lost $43,313.30 in shipping fees. Id. Other districts also did not seek out Plaintiff to deliver their books as a result of Defendant's policy change. Id. at 7 ¶ 5.

In an email sent on February 6, 2015, Defendant offered to waive its shipping fees for two orders and reduce its rate for future orders so that it, rather than Plaintiff, would ship the orders. Id. at 4 ¶ 10. The email mentions Plaintiff by name. Id. Defendant sent hundreds of similar emails to customers and prospective customers of Plaintiff in 2014 and 2015 in an attempt to put Plaintiff out of business. Id. at 5 ¶ 11.

## II. Antitrust Tying (Count 1)

Defendant repeats the argument, rejected by this Court in its earlier opinion, that Plaintiff has not alleged antitrust injury. For the same reasons as before, Debjo Sales, LLC, 2015 WL 1969380, at *2-*4, and with the added allegations concerning Plaintiff's contracts with school districts further demonstrating injury to competition, the Court is not persuaded by this argument.

Defendant's argument that Plaintiff has not pleaded a plausible relevant market does not prevail. The Second Amended Complaint alleges that "The products in question – K-12 school text books and the like – are distinct articles of commerce, separate and apart from defendant's service of delivery of the same. Indeed, school districts purchase the same in bulk, such that K-12 text books constitute distinct articles of commerce." Second Am. Compl. at 5 ¶ 2. Because Plaintiff has alleged that K-12 textbooks are purchased in bulk by school districts, it has plausibly alleged a distinct product market. The Court will not dismiss the claim on this basis on the pleadings.

Defendant argues that Plaintiff has not pleaded separate demand for textbooks and textbook delivery in the K-12 market. The Court disagrees. The Second Amended Complaint alleges that school districts entered into hundreds of contracts for textbook delivery with Plaintiff, including specifically fifty-nine contracts in summer 2014. That alone is sufficient to plausibly allege that delivery of textbooks and their purchase have distinct demand such that it is efficient to provide them separately.

Defendant also claims that textbook sale and delivery cannot be distinct markets because textbooks may not be delivered without first being purchased. For this proposition, Defendant cites Jefferson Parish Hospital District No. 2 v. Hyde: "For products to be treated as distinct, the tied product must, at a minimum, be one that some consumers might wish to purchase separately without also purchasing the tying product." 466 U.S. 2, 39 (1984) abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28 (2006). This citation conflates concepts and ignores relevant precedent which establishes that the appropriate inquiry to define the relevant

markets is consumer's desire to purchase products separately, not a functional analysis of whether one market depends upon another.

For example, in Eastman Kodak Co. v. Image Technical Services, Inc., the Supreme Court rejected an argument that servicing of Kodak machines could never be performed without also having Kodak parts, so the markets could not be distinct: "By that logic, we would be forced to conclude that there can never be separate markets, for example, for cameras and film, computers and software, or automobiles and tires." 504 U.S. 451, 463 (1992). The Court then cited Jefferson Parish in support, noting that "[w]e have often found arrangements involving functionally linked products at least one of which is useless without the other to be prohibited tying devices." Id. (citing Jefferson Parish, 466 U.S. at 19 n.30). Jefferson Parish itself rejects the kind of functional analysis Defendant proposes. "We have often found arrangements involving functionally linked products at least one of which is useless without the other to be prohibited tying devices." Jefferson Par. Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 44 n.30 (1984) (collecting cases) abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28 (2006). Furthermore, Defendant's reasoning implies that all delivery of any product can never be the subject of a tying claim, yet Defendant cites no case supporting this broad proposition. The Court will not establish such a rule now.

Defendant also argues that Plaintiff had to plead the terms of each contract in order to survive at this stage. There is no support for that claim. Plaintiff pled the relevant components of each contract: terms of delivery, total cost, fees, and roughly which entities entered into contracts with them. No more is required at this stage.

Defendant next argues that there is no indication that a substantial amount of interstate commerce has been affected. But Plaintiff has identified shipped goods worth almost $866,266.08 affected in summer of 2014 alone, with fees of $43,313.30. Plaintiff also alleged that it delivered $8.5 million worth of HMH textbooks from 2009 to 2014. Second Am. Compl. at 6 ¶ 3. That is enough. See Int'l Salt Co. v. United States, 332 U.S. 392, 395 (1947) ($500,000 of salt sales sufficient to constitute substantial economic effect) abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc., 547 U.S. 28 (2006). There is no indication this market is shrinking or that Plaintiff's fees in summer 2014 are an aberration. Plaintiff also alleges that it has lost substantially more than the identified fees, because Defendant's actions have deterred many customers from contracting with Plaintiff in the first place. The Court finds that Plaintiff has stated facts sufficient plausibly to find a substantial amount of interstate commerce has been affected.

### III. Intentional and Tortious Interference (Counts 2 and 3)

#### A. Malice

Defendant argues that Plaintiff, as before, has failed to allege malice. The Court disagrees. Malice requires that an action taken be without justification or excuse. Printing Mart-Morristown v. Sharp Elecs. Corp., 563 A.2d 31, 37 (N.J. 1989); see also Mu Sigma, Inc. v. Affine, Inc., No. 12-1323, 2013 WL 3772724, at *5 (D.N.J. July 17, 2013) (finding Plaintiff's allegation that Defendants maliciously sought to induce Plaintiff's clients to place orders with them instead was insufficient to plead malice).

3

As Defendant admits, the Second Amended Complaint adds an allegation that Defendant's new shipping policy was enacted for the sole purpose of harming Plaintiff's business. Second Am. Compl. at 11 ¶ 4. This denies that Defendant's reasoning—mitigation of shipping costs—was the actual justification for its policy. Plaintiff also identifies an email where Defendant offered to eliminate the fees temporarily in exchange for shipping through them rather than Plaintiff, and offered to waive fees in exchange for a denial of business to Plaintiff. Id. Finally, Plaintiff alleges that hundreds of similar emails were sent for the sole purpose of undercutting its business. That is sufficient to allege malice here.

### B. Contracts and Economic Advantage

Defendant also argues that Plaintiff has not adequately alleged specific contracts. The Court disagrees.[1] In its amended pleadings, Plaintiff alleges it lost contracts to deliver Defendant's textbooks worth $8.5 million for $43,313.30 in shipping fees. Id. at 4 ¶ 9. There were fifty-nine purchase orders providing for delivery for nineteen school districts. Id. Plaintiff was also preapproved by EPS to provide textbook delivery service without going through a bidding process. Id. at 2 ¶ 5.

Defendant similarly argues that Plaintiff has not adequately alleged prospective economic advantage. The Court disagrees, as the allegations of specific contracts discussed above, combined with the allegation that many school districts declined to work with Plaintiff due to Defendant's policy change, are sufficient to state a claim.

Defendant's motion is therefore **DENIED**.

**SO ORDERED.**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**UNITED STATES DISTRICT JUDGE**

---

[1] Defendant mischaracterizes Plaintiff's Second Amended Complaint as affirmatively pleading that contracts did not exist prior to the shipping policy. Plaintiff's complaint provides specifics for contracts following the policy change, but also indicates that it shipped $8.5 million worth of Defendant's books to school districts from 2009 to 2014.

4