**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EMILY ELIZABETH LAZAROU and AAFAQUE AKHTER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 1:19-cv-01614 |
| v. | |
| AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY, | Honorable Martha M. Pacold |
| Defendant. | |

**BRIEF OF DEFENDANT IN SUPPORT OF ITS MOTION TO DISMISS PLANTIFFS'**
**FIRST AMENDED CLASS ACTION COMPLAINT**

Defendant American Board of Psychiatry and Neurology ("ABPN"), by and through its

counsel, submits this Brief in Support of its Motion to Dismiss Plaintiffs' First Amended Class

Action Complaint ("FAC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

The Court previously dismissed Plaintiffs' Complaint through its Order entered

September 11, 2020, with leave for Plaintiffs to amend. ECF No. 60. The Court dismissed

Plaintiffs' tying claim because, among other deficiencies, "plaintiffs have not plausibly alleged

that ABPN's initial certification and MOC are distinct products." ECF No. 60 at 12. Plaintiffs

took the opportunity to amend, alleging three causes of action: 1) *per se* tying; 2) Rule of Reason

tying; and 3) unjust enrichment.[1] The amended allegations in the FAC focus primarily on

attempting to show that ABPN's "Maintenance of Certification" ("MOC") is equivalent to other

continuing professional development ("CPD") products. *See generally* FAC. Nevertheless,

---

[1] Plaintiffs' initial Complaint asserted both tying theories in a single count, which have been split into separate counts in the FAC. Plaintiffs' initial Complaint also asserted a count for illegal monopolization that is no longer alleged in the FAC.

despite the extensive additional allegations, the FAC still fails to state a claim and should be dismissed, as Plaintiffs have failed to plausibly allege that MOC and initial certification are separate products as required to support tying claims or that MOC is a product that is competitive to CPD where the products have separate purposes. Finally, Plaintiffs' unjust enrichment claim similarly fails or should be dismissed for lack of jurisdiction. Accordingly, the Court should dismiss Plaintiffs' FAC with prejudice.

ABPN's briefing in its motion to dismiss Plaintiffs' initial Complaint sets forth relevant background, to which ABPN respectfully refers the Court as needed. *See* ECF Nos. 23, 39 and 49. By way of brief reminder, ABPN is an independent not-for-profit 501(c)(6) corporation and a member board of the American Board of Medical Specialties ("ABMS") responsible for creating, maintaining and administering physician certification and maintenance of certification standards in psychiatry, neurology and several subspecialties of those fields. FAC at ¶¶ 2, 32, 49-52. ABPN certification is completely voluntary, is not required to practice medicine as a physician, and the ABPN plays no role in physician licensing. *See* FAC at ¶¶ 4-5, 33-34.

## THE STATUS OF THE PARALLEL CASES

As this Court is aware, four other nearly identical cases have been filed against other ABMS-member boards. Two by the attorneys bringing this lawsuit: 1) *Kenney et al. v. American Bd. of Internal Med.* (E.D. Pa); 2) *Siva v. American Bd. of Radiology* (N.D. Ill.); and two by a California law firm: 3) *Rosenstein v. American Bd. of Orthopaedic Surgery* (N.D. Ill.); and 4) *Mannis v. American Bd. of Med. Specialties* (N.D. Ill). The *Kenney* case was dismissed with prejudice[2] and is currently on appeal before the Third Circuit Court of Appeals. The *Siva* case was initially dismissed without prejudice and, subsequently the amended complaint was

---

[2] *Kenney v. Am. Bd. of Internal Med.*, 412 F. Supp. 3d 530 (E.D. Pa. 2019).

dismissed.[3]   In the *Siva* case, like here, plaintiff's amended complaint added hundreds of paragraphs of new allegations and brought the identical three claims as pursued here. Nonetheless the Court in *Siva* ruled:

> Plaintiff's detailed allegations in a complaint of over seventy pages do not contain or adumbrate facts that, if developed and proven, would establish certain indicia of separateness, such as any genuine history of separate sales of the allegedly separate products …. [T]he Court doubts at this point that plaintiff will be able to amend the complaint to state a claim[]….

*Siva*, 2021 WL 76824, at *6-7.  Finally, the *Rosenstein* and *Mannis* cases were initially filed in California, then transferred to the Northern District of Illinois and thereafter voluntarily dismissed.[4]

## LEGAL STANDARD

The ABPN moves, pursuant to Rule 12(b)(6), to dismiss the FAC.  To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)) (internal quotation marks omitted).  Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of a line between possibility and plausibility of entitlement to relief." *Id.*  The pleading standard in antitrust cases articulated in *Twombly* is rooted in the practical reality that antitrust cases can be enormously expensive. This standard requires the Court to insist upon pleadings that provide sufficient factual basis demonstrating an antitrust claim is plausible, before subjecting antitrust defendants to expensive discovery proceedings. *Twombly,* 550 U.S. at 558; *Limestone Dev. Corp. v. Vill. of Lemont,* 520 F.3d 797, 803–804 (7th Cir. 2008) (in complex antitrust cases,

---

[3] *See*, *Siva v. Am. Bd. of Radiology*, 418 F. Supp. 3d 264 (N.D. Ill. 2019)) and *Siva v. Am. Bd. of Radiology*, No. 19-C-1407, 2021 WL 76824, at *2 (N.D. Ill Jan. 8, 2021), respectively.
[4] *See Rosenstein*, No. 1:20-cv-06244, ECF No. 44 (N.D. Ill. Nov. 13, 2020); *Mannis*, No. 1:20-cv-06238, ECF No. 83 (N.D. Ill. Nov. 12, 2020).

where discovery is likely to be costly, a fuller set of factual allegations may be necessary). This is even more so true where, as here, the antitrust case seeks class action status. *Twombly,* 550 U.S. at 559; *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 n. 4 (2d Cir. 2007).

## ARGUMENT

## I. PLAINTIFFS' TYING CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs' tying claims, now formally divided into separate *per se* and rule of reason claims, both fail as a matter of law. Tying arrangements involve "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product..." *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5–6 (1958); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461−62 (1992); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 11−12 (1984), *abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006). "[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Jefferson Parish*, 466 U.S. at 11−12.

To establish a *per se* tying arrangement, a plaintiff must show that: (1) the tying arrangement is between two distinct products or services, (2) the defendant has sufficient economic power in the tying market to appreciably restrain free competition in the market for the tied product, and (3) a not insubstantial amount of interstate commerce is affected. *Reifert v. S. Cent. Wisconsin MLS Corp.*, 450 F.3d 312, 316 (7th Cir. 2006) (citations omitted) (quoting *Carl Sandburg Vill. Condo. Ass'n No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 207 (7th Cir. 1985)).

The rule of reason analysis focuses on, among other things, the anticompetitive effects of tying, such as an extension of market power to the tied product market. *Carl Sandburg*, 758 F.2d

at 210-211 (citing *Jefferson Parish*, 466 U.S. 2 at 1571-1572). As the Seventh Circuit recently stated, "[t]he factual elements that must be proven for a tying claim capture much of what must be demonstrated in a rule of reason case," including "some assessment of market power, rough predictions of anticompetitive harm, and consideration of precompetitive justifications." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 468 (7th Cir. 2020).

### A.     Certification and MOC Are Not Separate Products.

Plaintiffs' tying claims fail because certification and MOC are not separate and distinct products. As this Court previously recognized, "both *per se* and rule of reason tying claims require that the tying arrangement involve two distinct products. ECF No. 60 at 7 (citing *Siva*, 418 F. Supp. 3d at 271 n.1; *see also Siva*, 2021 WL 76824, at *2. "[T]he answer to the question whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items." *Jefferson Parish*, 466 U.S. at 19 (footnote omitted); *Viamedia*, 951 F.3d at 469. "[A] tying arrangement cannot exist unless two separate product markets have been linked." *Jefferson Parish*, 466 U.S. at 21. "The requirement that two distinguishable product markets be involved follows from the underlying rationale of the rule against tying," *i.e.*, that the defendant "ha[s] foreclosed competition on the merits in a product market distinct from the market for the tying item." *Id.* (footnote omitted). The *Jefferson Parish* Court held that "[t]hus, in this case no tying arrangement can exist unless there is a sufficient demand for the purchase of anesthesiological services separate from hospital services to identify a distinct product market in which it is efficient to offer anesthesiology services separately from hospital services." *Id.* at 21–22 (footnote omitted).

Multiple district courts have recently considered tying claims against other ABMS boards, as this Court recognized in its prior ruling. ECF No. 60 at 7. In *Siva*, also pending in

this district, the plaintiff brought a parallel complaint against the American Board of Radiology, which was dismissed by Judge Alonso in 2019.  418 F. Supp. 3d at 264.  The plaintiff in *Siva* amended his complaint and, like here, focused primarily on attempting to show that MOC is equivalent to other CPD products and, therefore, separate from certification.  Judge Alonso recently dismissed the amended complaint primarily because there was no plausible allegation or inference that certification and MOC are separate products.  2021 WL 76824, at *3-6. Specifically, in *Siva*, Judge Alonso found that the character of demand for initial certification and MOC is the same, as both relate to certification from the specialty board.  *Id.* at *3.

Judge Alonso also found allegations and arguments characterizing MOC as a type of CPD product to be unavailing.  *Id.*  In *Siva*, the main difference between the original complaint and the amended complaint "is that plaintiff alleges that MOC and initial certification are separate products because MOC is a kind of CPD product, and a separate market for CPD products has existed since long before [the specialty board] began to impose an MOC requirement."  *Id.* at *5.  But alleging that MOC falls under the broad umbrella of CPD products does not separate it from ABR's core certification product because it does not account for the fact that MOC has been essentially integrated into the certification product in a way that no other CPD product has."  *Id*. (citing *Kaufman v. Time Warner*, 836 F.3d 137, 144-145 (2d Cir. 2016); *Kenney*, 412 F. Supp. 3d at 544-545.

While the plaintiff in Siva characterized "MOC as a kind of CPD product, . . . the fact remains that plaintiff alleges that radiologists buy it to maintain ABR certification, and therefore it is not 'fungible' with CPD products that do not serve that purpose."  *Id.* (citing *Subsolutions, Inc. v. Doctor's Assocs., Inc.*, 436 F. Supp. 2d 348, 354 (D. Conn. 2006)).  MOC also does not foreclose competitors because no other organization can provide certification in the specialty

board's name. *Id.* at *6. And where the plaintiff in *Siva* alleged that no physicians would buy MOC at all if it were not tied to initial certification, such an argument makes MOC a "phantom product" that has no value and is unwanted, making the foreclosure of other suppliers impossible. *Id.* (citing Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application*, ¶ 1750 n.1 (4th and 5th Editions)).

The same is true here, particularly given the close similarities between the amended complaint in *Siva* and the FAC in this case. Plaintiffs go to great lengths explaining the history of CPD products and attempting to characterize MOC as any other CPD product based on similar continuing learning goals. *See* FAC at ¶¶ 104-174. However, as in the Court's earlier dismissal of Plaintiffs' initial complaint and as in *Siva*, these amendments are unavailing and do not cure the inevitable legal conclusion that MOC and initial certification are not separate products. Here, ABPN provides only one product: board certification of physicians in specific medical specialties. *See* FAC at ¶ 2. While, in the past, ABPN offered lifelong certifications, for the past twenty-five years or so it has only offered time-limited certifications requiring additional activities to maintain that certification on an ongoing basis. *See* FAC at ¶¶ 160-217. Regardless, the one and only product that physicians demand is board certification. MOC is not a separate stand-alone product that is offered distinctively from initial certification, nor is MOC a stand-alone product that any physician demands independent of initial certification. *See, e.g.*, FAC at ¶¶ 217-249.[5] Importantly, the named Plaintiffs were each certified by ABPN **after** the introduction of time-limited certificates – in other words, when each Plaintiff applied for and, eventually, obtained ABPN board certification **they knew it would be time-limited and subject to MOC requirements**. *See* FAC at ¶¶ 270-273, 298-302. Moreover, the fact that ABPN

---

[5] This fact – that physicians do not demand MOC separately from initial certification is, indeed, the entire theory and gravamen of Plaintiffs' FAC. *See, e.g.*, FAC at ¶¶ 217, 222-224, 245.

automatically enrolls its physicians in MOC after they have obtained initial certification[6] is further proof it is one product; when a consumer enters an automatic renewal program, they are not buying two products – the product itself and a "renewal" product – they are buying one product which they wish to renew on an ongoing basis.

Despite adding allegations regarding ABPN's prior CPD offerings in the 1970's and 1980's, Plaintiffs have not, and cannot, allege that ABPN has ever sold initial certification and MOC separately. Plaintiffs can only allege that MOC is another CPD product by making conclusory allegations largely based on the general idea that MOC and CPD both promote continued learning and professional development. *See, e.g.*, FAC at ¶¶ 147, 159, 160. Plaintiffs' attempted characterizations are also based on conclusory allegations regarding purported "strategic" naming of MOC as MOC instead of some CPD. *See* FAC at ¶¶ 160, 162. Plaintiffs' characterizations are only successful if they ignore their own contradictory allegations that admit that MOC is a requirement of continuing certification. *See* FAC at ¶¶ 10, 16, 162-170, 214-217. As was recognized in the dismissal of the amended complaint in *Siva*, the character of demand for initial certification and MOC is the same, as both relate to certification from ABPN. 2021 WL 76824 at *3. Where Plaintiffs admit that physicians would not purchase MOC from ABPN if not for the continuing certification requirement, "the competitive purposes of the rule against tying are not served by fractioning" initial certification and MOC into separate components, "as there is no market distinct from that of certification itself for those unbundled components." *Id.* at *4. Similarly, the fact that Plaintiffs allege that MOC and initial certification are paid separately and accounted for separately also lacks merit, but simply allows payment as the buyer goes. *See* ECF No. 60 at 11; *Siva*, 2021 WL 76824 at *4.

---

[6] *See* FAC at ¶¶ 196, 272, 299.

Even if MOC serves a similar purpose as to lifelong learning like other CPD products, Plaintiffs' allegations simply fail to account for and separate MOC from its integration with the ongoing certification process that does not exist with other CPD products. As this Court previously acknowledged, other CPD products do not maintain ABPN certification. *See* ECF No. 60 at 8, 11 (noting that other organizations like NBPAS do not offer CPD that can maintain ABPN certification, and that such would be an "imperfect substitute"); *see also Siva*, 2021 WL 76824 at *5 (explaining that other CPD products are not fungible with MOC and that "a maintenance-of-certification program that lacks the imprimatur of the certifying entity has no value to any physician seeking to demonstrate that he has obtained and maintained certification.").

Finally, the risk of foreclosing competition in this case is non-existent where only ABPN can offer ABPN certification and set those requirements. *Siva*, 2021 WL 76824 at *6. Likewise, where Plaintiffs allege that MOC lacks value to physicians aside from its connection to ABPN certification, MOC is a "phantom product" that has no value and is unwanted, making the foreclosure of other suppliers impossible. *Id.* (citing Areeda & Hovenkamp, *supra*, at ¶ 1750 n.1). As this Court recognized in dismissing Plaintiffs' initial complaint, "the circumstances taken as a whole point toward one product rather than two." ECF No. 60 at 11. As in *Siva*, Plaintiffs' extensive amendments "fail to establish certain indicia of separateness." 2021 WL 76824 at *6. Accordingly, the Court should dismiss Plaintiffs' FAC with prejudice.[7]

---

[7] In analogous cases, Courts have routinely rejected tying claims under the antitrust statutes. *Allyn v. American Bd. of Med. Specialties, Inc.*, 2019 WL 297459, at *6 (M.D. Fla. 2019) (dismissing antitrust unlawful tying complaint against the ABMS and the American Board of Dermatology stating, "it is not clear from the complaint what two separate products are allegedly being tied together."); *see also Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 478 (7th Cir. 1988) ("[P]athology services are not a separate and distinct product from hospital services, they combine in the form of one product, not two tied products. Without two products, the alleged tying arrangement is impossible.").

**B.      Plaintiffs Fail to Plausibly Allege Actual Coercion or Force.**

To state a tying claim under the Sherman Act, a plaintiff must allege facts plausibly showing that (i) the seller uses ***actual coercion to force*** buyers to purchase the tied product; and (ii) the seller has sufficient economic power in the tying product market to coerce purchasers into buying the tied product. *Jefferson Parish Hosp.*, 466 U.S. at 13–14; *Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir.1994), *as amended on denial of reh'g* (Jan. 11, 1995) ("Substantial market power is an essential ingredient of every antitrust case under the Rule of Reason.").

Plaintiffs allege that certification by ABPN is required by "many" hospitals, insurers and industry related companies, and that certification is therefore not voluntary, particularly where it leads to higher salaries. *See* FAC at ¶¶ 67-103.  But even if true, the requirement is levied by independent non-parties – not by ABPN.  As this Court previously recognized, requirements of third-parties, like hospitals and insurers, do not constitute force or coercion.  ECF No. 60 at 13 n.4 (citing *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989); *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1383 (7th Cir. 1992); *United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 906 (N.D. Ill. 2019)).  The ABPN does not require any physician to become board certified, or to purchase MOC and maintain their continuing certification for any given length of time beyond initial certification.  Absent force or coercion, there can be no illegal tying, and the Complaint should be dismissed.

**C.      Plaintiffs Fail to Plausibly Allege Unreasonable Restraint of Trade.**

The Sherman Act does not prohibit every restraint on trade, but only those agreements which unreasonably restrain trade.  *American Council of Certified Podiatric Physicians and Surgeons v. American Bd. Of Podiatric Surgery, Inc.*, 185 F.3d 606, 619 (6th Cir. 1999);

*Schachar*, 870 F.2d at 397-399 ("That truism decides this case" in favor of defendant in that when a trade association provides information but does not constrain others to follow its recommendation, it does not violate the antitrust laws).

Here, other than mere conclusory allegations that ABPN is the monopoly supplier for certification and that there are high barriers to entry in the certification market, Plaintiffs allege no restraints. *See* FAC at ¶¶ 385-387. Plaintiffs fail to allege supporting facts. As this Court previously recognized, only ABPN offers ABPN certification, and others would be imperfect substitutes. *See* ECF No. 60 at 8, 11. Plaintiffs also fail to allege a definition of the restraint, the enforcement mechanism of the restraint, or how the restraint affected trade. Such is insufficient to state a cause of action. Moreover, any restraints are again the actions of independent third parties like hospitals and insurers.[8]

### D. Plaintiffs Fail to Plausibly Allege Substantial Market Power.

Under Section 1 of the Sherman Act, substantial market power is necessary to state a cause of action. *Sanjuan*, 40 F.3d at 251 ("Substantial market power is an essential ingredient of every antitrust case under the Rule of Reason.") Market power must be alleged in more than vague and conclusory terms to prevent the dismissal of the complaint on a Rule 12(b)(6) motion.

---

[8] *See Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties,* No. 14-CV-02705, 2017 WL 6821094, at *5 (N.D. Ill. Dec. 13, 2017) ("AAPS") ("Nor has AAPS sufficiently pleaded that the alleged restraint is unreasonable. '[I]t is commonplace, and often very useful, for organizations to recommend quality standards ... or adopt them as part of a certification process.... Merely to say that the standards … have some market effects has not generally been enough to condemn them as 'unreasonable' under the Sherman Act.' More would be needed to conclude that any restraint is unreasonable, such as the use of standards setting as a predatory device by some competitors to injure others (for example, by "showing that the standard was deliberately distorted by competitors of the injured party ... through lies, bribes, or other improper forms of influence, in addition to a further showing of market foreclosure.") (quoting *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 57 (1st Cir. 1999); *Poindexter v. American Bd. of Surgery, Inc.*, 911 F. Supp. 1510, 1519–20 (N.D. Ga. 1994) ("Finally, there is no proof that the Board acted to constrain Plaintiff's ability to compete. Hospitals, patients and insurers ***voluntarily*** rely on the Board's certification decision…. users of that information have the sole power to determine whether that surgeon is entitled to patronage, surgical privileges, or preferred insurance rates.").

*See Foundation for Interior Design Educ. Research v. Savannah College of Art and Design*, 73 F. Supp. 2d 829, 837 (W.D. Mich. 1999).

Substantial market power means that a defendant "can raise prices above a competitive level without losing its business." *See 42nd Parallel North v. E Street Denim Co.,* 286 F.3d 401, 404 (7th Cir. 2002). In order to sufficiently allege market power, a plaintiff must allege an ability to control prices. *See Daniel v. Am. Bd. of Emergency Med.*, 988 F. Supp. 112, 125 (W.D.N.Y. 1997).

Plaintiffs allege merely that ABPN charges supra-competitive monopoly prices for MOC, having raised priced from $127.40 annually in 2002 to $175 annually after 2012, FAC at ¶¶ 250-252, and that organizations that offer similar certification maintenance, like NBPAS, charge less than $100 annually, FAC at ¶¶ 132-133. However, this ignores that NBPAS and other CPD products are not integrated with ABPN's certification process. *See* ECF No. 60 at 11; *Siva*, 2021 WL 76824 at *6. Finally, nowhere in the Complaint do Plaintiffs allege that the ABPN has driven-out competition from the certification market. *See AAPS*, 2017 WL 6821094 at *4 ("AAPS has not alleged facts sufficient to suggest that ABMS has sufficient market power to cause a restraint of trade. There are no factual allegations that ABMS's activities have cut back output in the market or driven up prices to consumers—particularly as ABMS certification is a voluntary process, failure to be certified does not render a physician unable to practice medicine.").

### E. Plaintiffs' Tying Claims Are Barred By the Statute of Limitations.

Sherman Act antitrust claims are subject to a four-year statute of limitations and the unjust enrichment claim a five-year limitation. 15 U.S.C. § 15b; 735 ILCS 5/13-205. While this Court applies the discovery rule and typically will not bar a complaint for statute of limitations at

the pleading stage since a complaint need not anticipate an affirmative defense, in this case the Complaint should be dismissed – with prejudice – because "it is clear from the face of the ... complaint that it is hopelessly time-barred." *In re Broiler Chicken Antitrust Litig.*, 290 F.Supp.3d 772, 806 (N.D. Ill. 2017) (quoting *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675 (7th Cir. 2009)).

Here, Plaintiffs admit and aver that by the early 2000's MOC was required for physicians certified after 1994. *See* FAC at ¶¶ 148-150, 184. In addition, while the details of the MOC program changed over the years the key complained of characteristics remained the same: (i) physicians are automatically enrolled in MOC; and (ii) without complying with MOC a physician loses certification status. *See* FAC at ¶¶ 196-200.

In this case, Plaintiffs' causes of action regarding MOC accrued when they were certified by ABPN, became subject to ABPN's MOC, and began paying MOC fees to ABPN. This was 2005 for Dr. Akhter and 2007 for Dr. Lazarou, both well beyond the applicable statute of limitations period. Additionally, although continuing violations may restart the antitrust statute of limitations, there must be a "new and independent act that is not merely a reaffirmation of a previous act." *See, e.g.*, *Witt Co. v. RISO, Inc.*, 948 F.Supp.2d 1227, 1236–37 (D. Or. 2013) (antitrust tying case holding performance of an alleged illegal contractual tie-in provision does not satisfy the continuing violation requirements) (quoting *Pace Indus., Inc. v. Three Phoenix Co.,* 813 F.2d 234, 237, 238 (9th Cir. 1987). Here there was no new and independent act; rather, minor changes to MOC were merely a reaffirmation of a previous act with the same predicated alleged antitrust violations, namely mandatory MOC and the payment of MOC fees. Accordingly, Plaintiffs' tying claims should be dismissed because they are time-barred.

13

## II.     THE UNJUST ENRICHMENT CLAIM MUST BE DISMISSED

Where Plaintiffs' federal tying claims fail, the Court should decline to exercise jurisdiction over their unjust enrichment claim, which is governed by Illinois law.  *See* ECF No. 60 at 14; *Siva*, 2021 WL 76824 at *6.  Even if Plaintiffs' federal claims survive dismissal, their certifications and purchases of MOC are governed by contracts, which precludes their unjust enrichment claim under Illinois law.  *See, e.g.*, *Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, No. 14-C-1512, 2017 WL 1105400, *13 (N.D. Ill. 2017) (internal quotations and citation omitted).  Moreover, Plaintiffs do not allege that they received nothing of value for their MOC fees—they received MOC courses and materials, and they received continuing certification in their specialties, and Plaintiffs ignore these benefits. *See, e.g.*, *Indus. Lift Truck Serv. Corp. v. Mitsubishi Int'l Corp.*, 432 N.E.2d 999, 1002 (Ill. App. Ct. 1982).  Accordingly, the unjust enrichment claim fails as a matter of law and must be dismissed with prejudice.

## CONCLUSION

For the above reasons, Plaintiffs' First Amended Complaint should be dismissed in its entirety and with prejudice for failure to state a claim upon which relief can be granted.


Dated: January 21, 2021                    Respectfully submitted,



/s/ *Christopher Sullivan*
Christopher B. Sullivan
MITCHELL BARLOW & MANSFIELD, P.C.
9 Exchange Pl., STE 600
Salt Lake City, Utah 8411
Tel: (801) 998-8888
csullivan@mbmlawyers.com

14

Anne I-Pin Shaw
Darryl Tom
SHAW LEGAL SERVICES, LTD.
540 W. Briar Place, Unit B
Chicago, Illinois 60657
ashaw@shawattorneys.com
dtom@shawattorneys.com

*Attorneys for Defendant American Board of Psychiatry and Neurology*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 21, 2021, the foregoing **BRIEF OF DEFENDANT IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT** was electronically filed with the Clerk of the Court using the CM/ECF system which automatically sent notification of such filing by email to the following:

C. Philip Curley (pcurley@robinsoncurley.com)
Cynthia H. Hyndman (chyndman@robinsoncurley.com)
Laura R. Feldman (lfeldman@robinsoncurley.com)
ROBINSON CURLEY P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL 60606

Katrina Carroll (kcarroll@carlosnlynch.com)
CARLSON LYNCH, LLP
111 West Washington, Suite 1240
Chicago, IL 60602

*/s/ Christopher Sullivan*

16