IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMILY ELIZABETH LAZAROU and AAFAQUE AKHTER, individually and on behalf of all others similarly situated </br></br>Plaintiffs,</br></br>v.</br></br>AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY,</br></br>Defendant. | </br></br></br></br></br></br></br>No. 1:19-cv-01614</br></br>Hon. Martha M. Pacold |

PLAINTIFFS' SUPPLEMENTAL BRIEF ADDRESSING
*SIVA v. AMERICAN BD. OF RADIOLOGY* AND IN OPPOSITION TO
MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Emily Elizabeth Lazarou and Aafaque Akhter, individually and on behalf of all others similarly situated, by counsel, submit this Supplemental Brief pursuant to the Court's Order of February 17, 2023. (Dkt. #83).

As explained below, the Seventh Circuit opinion in *Siva v. American Bd. of Radiology*, 38 F.4th 569 (7th Cir. 2022) ("*Siva*"), supports denial of Defendant American Board of Psychiatry and Neurology's ("ABPN") Motion to Dismiss Plaintiff's First Amended Class Action Complaint. ("Motion to Dismiss") (Dkt. #68). *Siva* emphatically rejects the same arguments ABPN has made for dismissal here. *See* Part I below. Further, unlike in *Siva*, Plaintiffs here have asserted myriad plausible allegations that ABPN's "Maintenance of Certification" product ("MOC") and continuing professional development products ("CPD") sold by others are "substitutes" or "reasonably interchangeable," and thus within the same product market. *See* Part II below. Alternatively, if the Court believes the First Amended Class Action Complaint ("Complaint") (Dkt. #63) does not already adequately allege that MOC and CPD products are "substitutes" or

"reasonably interchangeable," Plaintiffs requests thirty days to amend to address any such pleading deficiencies. Notably, that issue has not been raised or considered previously. *See* Part III below.

I. *Siva* **Rejects ABPN's Argument That Certification and MOC Are "Separate Products**.**"**

APBN argues certification and MOC are not separate products because (1) MOC is a "component" of certification, (2) MOC has been "integrated" into "the ongoing certification process," and (3) doctors buy MOC because it is the only lifelong learning product that can "maintain" certification. *See* Brief of Defendant in Support of Its Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("ABPN Br.") (Dkt. #69, at 6, 8) ("MOC has been essentially integrated into the certification product in a way that no other CDP product has"; doctors "buy [MOC] to maintain … certification"; court should not "fraction[] initial certification and MOC into separate components"). Each of these arguments is rejected in *Siva*.

The analysis in *Siva* of the *Jefferson Parish* "character of the demand" factors for determining separate products tracks Plaintiffs' approach here. Courts are to look at "a number of objective indicators of market demand [to] help answer the separate-products question." 38 F.4th at 576. These include "how the market participants have sold and purchased [the items]," "whether the two items are 'separately priced and purchased,'" and "whether they are distinguishable in the eyes of buyers." *Id.* (citations omitted). Importantly, the Seventh Circuit has recognized that demand must be assessed before the tie is in place: "The fact that buyers may wish to purchase and use two complementary products together does not, in and of itself, convert the two separate products into a single product. Rather, the market must be 'assessed at the pre-contract rather than

post-contract stage.'" *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 469 (7th Cir. 2020) (citations omitted).[1]

Through this lens, the Seventh Circuit held the plaintiff in *Siva* had alleged the relevant "character of the demand" indicators to show certification and CPD products are separate products:

> If we start with "how the market participants have sold and purchased the [items]," it is easy to see that CPD products and certifications are separate products. *Viamedia*, 951 F.3d at 469. Prior to the creation of the MOC program, Board certifications were valid for life, and radiologists separately purchased CPD products from third-party vendors, both to comply with state licensing requirements and, one imagines, for their own betterment as medical professionals. Siva's complaint identifies various institutions – medical schools, professional societies, clinics, and the like – that have sold CPD products to radiologists "for decades" without selling accompanying certification products. ***All told, "the character of the demand" for CPD products is distinct from that for certifications, so they are separate products under Jefferson Parish***, 466 U.S. at 19, 104 S. Ct. 1551.

*Siva*, 38 F.4th at 576 (emphasis added). As ABPN has already conceded, Plaintiffs' allegations here regarding the "objective indicators" of the "character of the demand" have "close similarities" with the allegations in *Siva*. (Dkt. #69, at 7). *Siva's* alignment with Plaintiffs' position here confirms that the "character of the demand" supports separate products.

*Siva* then proceeds to reject other ancillary arguments ABPN makes here. *See*, *Siva*, 38 F.4th at 577-78 ("Siva must be right" that "the Board's decision to name its CPD product 'maintenance of certification' is nothing but a clever means of disguising a tying arrangement"

---

[1]     ABPN improperly analyzes market demand after it began requiring MOC to maintain certification, rather than before it tied MOC and certification together. *See* ABPN Br. ("[w]hile in the past, ABPN offered lifelong certifications, for the past twenty-five years or so it has only offered time-limited certifications requiring additional activities to maintain that certification on an ongoing basis") (Dkt. #69 at 7). Relying on *Viamedia*, however, *Siva* specifically rejected such an analysis. 38 F.4th at 577 ("In reaching the conclusion that certification and MOC were a single product in part because of the degree of 'integrat[ion]' between the two, the district court [in *Siva*] improperly approached the analysis from a post-tie perspective.")

3

which the court should "see through … in conducting the separate-products analysis."; "And in crediting the Board's characterization of its product over the well-pleaded and contrary allegations in Siva's complaint, the district court also 'may have drifted beyond reviewing the legal sufficiency of [Siva's] allegations into a fact-finding role.'"; and "The mere fact that, as the district court found, '[doctors] buy [MOC] to maintain [Board] certification,' does not mean that MOC 'is not fungible' with CPD products that do not serve that purpose' – it may just mean that [the] alleged [] tying arrangement has worked as planned.").

*Siva* did not uphold dismissal of the complaint there for the reasons argued by ABPN here, or relied on by this Court in its own prior dismissal order. Instead, the Seventh Circuit ruled on an issue that neither party in *Siva* had anticipated or briefed (just as neither party has here), holding that the plaintiff there had not plausibly alleged "that MOC is a substitute for other CPD products." *Siva*, 38 F.4th at 578. In finding that MOC had not been adequately alleged as a CPD product, *Siva* held that the complaint must allege that MOC and CPD products are "'reasonabl[y] interchangeab[le]' in the minds of relevant consumers," such that "a [doctor] shopping for CPD products might see the Board's MOC program as a viable option for filling that need." 38 F.4th at 578. That holding is not dispositive in this case because the Complaint here contains ample allegations of the type *Siva* found lacking there.[2]

## II. The Complaint Contains Abundant Allegations Showing MOC and CPD are "Substitutes" and "Reasonably Interchangeable."

An inquiry whether products are part of the same market typically arises in the context of allegations about market power, most often in a merger context, where the government or other

---

[2]    *Siva* referred specifically to "cross-price elasticity between MOC and other CPD offerings" as a way in which MOC could be shown to be a CPD product. 38 F.4th at 578. As discussed below, however, there are different ways in which "substitute" and "reasonably interchangeable" products can be adequately alleged.

4

plaintiff must allege a "relevant product market." "A 'relevant product market' is a term of art in antitrust analysis … and is defined as all products reasonably interchangeable by consumers for the same purposes." *FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 13 (D.D.C. 2021) (internal quotations omitted). *See also United States v. Du Pont de Nemours and Co.,* 351 U.S. 377, 395 (1956) ("commodities reasonably interchangeable by consumers for the same purposes make up" the "relevant market" for antitrust purposes); *Fishman v. Estate of Wirtz*, 807 F.2d 520, 531 (7th Cir. 1986) (same). "[C]ourts look at whether two products can be used for the same purpose, and, if so, whether and to what extent purchasers are willing to substitute one for the other." *Facebook*, 560 F. Supp. 3d at 14 (quoting *United States v. H&R Block, Inc.*, 833 F. Supp. 2d 36, 51 (D.D.C. 2011)). Courts recognize that, "market definition is a question of fact." *E.I du Pont de Nemours and Company v. Kolon Industries, Inc.*, 637 F.3d 435, 442 (4th Cir. 2011); *Bogan v. Hodgkins*, 166 F.3d 509, 516 (2d. Cir. 1999) (defining a market is a "fact-driven inquiry" into "practical indicia").

Here, ABPN has already admitted MOC is a CPD product by arguing that, "MOC has been essentially integrated into the certification product in a way *no other CPD product has*." (Dkt. #69, at 6) (emphasis added). As effectively conceded by ABPN, then, the Complaint here is more than sufficient, especially given the pleading standards for whether products are "substitutes" and "reasonably interchangeable."

Plausibly alleging that products are "reasonably interchangeable" or are used by consumers as "substitutes" for one another is not onerous, since those determinations are highly fact-intensive, and dependent on discovery. "In the context of a Rule 12(b)(6) motion to dismiss, the complaint must either allege facts regarding substitute products, distinguish among comparable products, or allege facts relating to cross-elasticity of demand." *Intellective, Inc. v. Mass. Mut. Life Ins. Co.*, 190 F. Supp. 2d 600, 609 (S.D.N.Y. 2002). "Extensive analyses of reasonable interchangeability

and cross elasticity of demand ... are not required at the pleading stage." *Envirosource, Inc. v. Horsehead Res. Dev. Co.,* 95 Civ. 5106 (TPG), 1997 U.S Dist. LEXIS 12570, *8 (S.D.N.Y., Aug. 20 1997). *See also Theatre Party Assocs., Inc. v. Shubert Ass'n, Inc.*, 695 F. Supp. 150, 154 (S.D.N.Y. 1988) (requiring only "a theoretically rational explanation to support [plaintiff's] proposed relevant product market" to survive Rule 12(b)(6) motion); *Gianna Enters. v. Miss World (Jersey) Ltd.*, 551 F. Supp. 1348, 1354 (S.D.N.Y. 1982) (same).

Because the pleading requirement is conjunctive, "facts regarding substitute products" *or* "facts relating to cross elasticity of demand," *Intellective*, *supra*, "[a]n antitrust complaint need not expressly include the magic words 'cross-elasticity of demand' to state a claim … ." *Dixon v. National Hot Rod Association*, No. 1:19-cv-01470-JRS-DML, 2021 U.S. Dist. LEXIS 59443, *22 (S.D. Ind. Mar. 29, 2021). Thus, it is only in the "relatively rare" case of a "glaring deficienc[y]" in the pleadings where dismissal at the 12(b)(6) stage on this issue is appropriate. *Facebook,* 560 F. Supp. at 16-17; *accord Dixon*, 2021 U.S. Dist. LEXIS 59433, *23 (courts "should hesitate before dismissing a Sherman Act claim for failure to allege a relevant market in the absence of glaring inadequacies").

"Because market definition is a deeply fact-intensive inquiry courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Kolon Industries*, 637 F.3d at 443; *accord*, *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001) (same); *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001) ("Market definition is a highly fact-based analysis that generally requires discovery.") (citing *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 482 (1992)); *Ploss v. Kraft Foods Grp., Inc.*, 197 F. Supp. 3d 1037, 1070 (N.D. Ill. 2016) ("market definition is a deeply fact-intensive inquiry, [and] courts hesitate to grant motions to dismiss for failure to plead a

relevant product market"); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 767 F. Supp. 2d 880, 901 (N.D. Ill. 2011) (same).

The Complaint here is already replete with non-conclusory and plausible allegations that MOC is reasonably interchangeable with other CPD products. "'Interchangeability' looks to the use or function of the given product as compared to other products. Every product that can be substituted for the same use or purpose should be included within a single product market." *Intellective*, 190 F. Supp. 2d at 610. *See also Siva*, 38 F.4th at 578 ("reasonable interchangeability" requires allegations "that a radiologist shopping for CPD products might see the Board's MOC program as a viable option for filling that need"); *Tunis Brothers Co., Inc. v. Ford Motor Co.*, 952 F.2d 715, 722 (3d Cir. 1991) (when assessing reasonable interchangeability, the "[f]actors to be considered include price, use, and qualities").

Plaintiffs' current allegations (1) that MOC and CPD products have the same uses, the same qualities, and encompass the same tools, and (2) that doctors, in fact, substitute MOC and CPD products for each other, include:

- MOC fulfills the same purpose as other CPD products, providing tools for individual lifelong learning for doctors with the goal of enhancing physician quality and patient care. (Dkt. #63, at ¶¶ 8-10, 104-07, 152-54, 158, 354, 358).

- CPD vendors offer products that address the same subjects of learning that MOC also encompasses, using many of the same formats and tools as MOC. (Dkt. #63, at ¶¶ 9, 110-11, 130, 149, 186-189, 192).

- ABPN itself has explained that MOC is a reaction to a concern that ABPN "will continue to be challenged from the outside," and that MOC would "eliminate the need for such [outside] intervention," *i.e.*, from other CPD providers. (Dkt. #63, at ¶ 149).

- Some CPD products encompass "self-assessment activities" and "practice improvement projects," now required as part of MOC. (Dkt. #63, at ¶¶ 120-24, 188-89).

- ABPN previously sold another voluntary CPD product, "recertification," the precursor to MOC. (Dkt. #63, at ¶¶ 13, 141, 143, 147, 159).

7

- Some grandfathers voluntarily purchase MOC for lifelong learning purposes. (Dkt. #63, at ¶¶ 17, 179, 216, 366).

- MOC purchasers, who must use their "lifelong learning" dollars to purchase the ABPN MOC product because of the tie to certifications, do not spend those dollars on other providers' CPD products as they otherwise previously had; most grandfathers, who do not have to purchase MOC, do purchase other vendors' products. (Dkt. #63, at ¶¶ 19, 180, 217, 285-86, 288, 316-19, 322, 342, 367).

- Rather than being forced to buy MOC, Dr. Lazarou, Dr. Akhter, and other psychiatrists and neurologists would prefer to pursue lifelong learning through purchase of CPD products from others. (Dkt. #63, at ¶¶ 285-86, 288, 316-19, 384).

- Through the guise of something called Maintenance of Licensure, ABPN has been working toward substituting MOC for the continuing education credits currently required to meet State licensing requirements, with the result that doctors would have no need to purchase other CPD products. (Dkt. #63, at ¶¶ 171-73).

These well-pled facts accomplish exactly what *Siva* requires: they "mak[e] it plausible that MOC is a substitute for other CPD products." *Siva*, 38 F.4th at 578. At a minimum, they at least support such an inference.

ABPN may argue that some of the above allegations are comparable to certain allegations in *Siva*. First, however, because the product market issue was raised for the first time in the *Siva* opinion, plaintiff there did not have the opportunity to bring those comparable allegations to the attention of the Seventh Circuit, explain how they plausibly alleged that MOC and CPD products are "substitutes" or "reasonably interchangeable," and, thus, met the required pleading standards. Second, and related, *Siva's* criticism focused on allegations it found to be missing entirely, which as discussed below, Plaintiffs here can remedy, to the extent necessary, by amending.

And third, key differences exist between the allegations in the two cases, including well-pled, plausible allegations here that provide more detail or allege facts not presented in *Siva*. These include: (1) ABPN's own statement that MOC is intended to "eliminate the need for such [outside] intervention," *i.e.*, from other CPD providers (Dkt. #63, at ¶ 149); (2) greater detail about how

8

ABPN's MOC self-assessment component is comparable to self-assessment CPD products provided by others (*id.*, ¶¶ 120-24, 188-89); (3) ABPN's self-professed goal that MOC become a "proxy" for state licensure, such that MOC will become a complete substitute for other CPD products (*id.*, ¶ 172); and (4) the preference of Dr. Lazarou and Dr. Ahkter to buy other specific CPD products, but for being forced to buy MOC (*id.*, ¶¶ 285-86, 316-19). Since the sole reason the Seventh Circuit gave for upholding dismissal in *Siva* is not present here, ABPN's Motion to Dismiss should be denied.

### III. Alternatively, Plaintiffs Request Thirty Days to Amend.

In the event this Court believes Plaintiffs must allege more, they can. For example, CME credit toward State licensing requirements is now given to doctors who complete ABPN's MOC written examinations. It is difficult to imagine stronger evidence of the interchangeability of MOC and other CPD products. *Siva* noted specifically the lack of any allegation that doctors could earn CME credit by completing MOC. *Siva*, 38 F.4th at 580.

Similarly, ABPN and the other member boards, under the aegis of the American Board of Medical Specialties (ABMS), have moved closer toward making MOC "a proxy for State medical licensure," with the result that doctors will no longer need to purchase other CPD products to maintain their licenses. (Dkt. #63, at ¶¶ 171-73). Since the Complaint here was filed in November 2020, according to the Federation of State Medical boards, doctors in at least two States (Georgia and Idaho) can now maintain their license by purchasing MOC in place of current continuing education requirements. In other words, for doctors in those States, MOC will be a complete "substitute" for those other CPD products. This, like the specific allegations of Drs. Lazarou and Akhter already discussed above, addresses the perceived shortcoming in *Siva* that, "what is missing from this portion of the complaint is some factual allegations that these [doctors] have purchased

9

MOC instead of some other CPD offering available in the market." *Siva*, 38 F.4th at 581. The stated goal of ABPN and ABMS is nothing less than to make MOC a complete "substitute" for other CPD products in all fifty States, thus taking over the $3 billion medical continuing education market.

And finally, since the advent of MOC in or about 2005 through 2019 (the last year for which data is available), according to the Accreditation Council for Continuing Medical Education, the number of accredited providers of continuing medical education has declined over 25% from 2,322 to 1,724, suggesting that MOC "could possibly restrain 'competition on the merits in the [CPD] market.'" *Siva*, 38 F.4th at 581.

These are just some of the additional allegations that can be made, if necessary, were Plaintiffs allowed to amend, and which would provide the well-pled allegations that the Seventh Circuit found missing in *Siva*. "Leave to amend a complaint should be freely given absent undue delay or prejudice to the opposing party." *Salateski v. Marriott Intern., Inc.*, 256 F. Supp. 2d 808, 809 (N.D. Ill. 2003); *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002) (same). As already noted, until the Seventh Circuit opinion in *Siva*, whether MOC is adequately alleged as a CPD product was never raised by any litigant or Court. There can be no argument that granting leave to amend under those circumstances will result in undue delay. Nor can ABPN cite any prejudice, given the preliminary stage of the litigation.

## **CONCLUSION**

For all of the foregoing reasons, *Siva* supports denial of ABPN's Motion to Dismiss. Alternatively, Plaintiffs request thirty days to amend the Complaint.

        Respectfully submitted,

        **EMILY ELIZABETH LAZAROU and AAFAQUE AKHTER, individually and on behalf of all others similarly situated**

Dated: April 5, 2023         By:   /s/ C. Philip Curley
                          One of Their Attorneys

C. Philip Curley
Robert L. Margolis
ROBINSON CURLEY P.C.
200 North LaSalle Street, Suite 1550
Chicago, IL 60601
Tel. (312) 663-3100
pcurley@robinsoncurley.com
rmargolis@robinsoncurley.com