IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMILY ELIZABETH LAZAROU and AAFAQUE AKHTER, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No.: 1-19-cv-01614 |
| v. | Honorable Jeremy C. Daniel |
| AMERICAN BOARD OF PSYCHIATRY AND NEUROLOGY, | |
| Defendant. | |

**BRIEF OF DEFENDANT IN SUPPORT OF ITS MOTION TO DISMISS PLANTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

Defendant American Board of Psychiatry and Neurology ("ABPN"), by and through its counsel, submits this brief in Support of its Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION[1]

This is Plaintiffs' third attempt to articulate a plausible claim of illegal antitrust tying of the ABPN's certification and maintenance of certification ("MOC") program. Since the Plaintiffs first filed their complaint nearly five years ago [ECF No. 1], through the filing of this SAC, nothing substantive has changed or "come to light." It remains the same certification and MOC industry, the same set of facts, the same legal theories and the same causes of action.

As with the FAC, here – again – Plaintiffs bring this putative class action complaint:

---

[1] By way of brief reminder, ABPN is an independent not-for-profit 501(c)(6) corporation and a member board of the American Board of Medical Specialties ("ABMS") responsible for creating and administering physician certification and maintenance of certification standards in psychiatry, neurology and multiple subspecialties of those fields. SAC at ¶¶ 2, 20-21. ABPN certification is not required to practice medicine as a physician and the ABPN plays no role in physician licensing. SAC at ¶ 33.

1

> "[U]nder the Sherman Antitrust Act (15 U.S.C. § 1 *et seq.*) and the Clayton Act (15 U.S.C. §§ 15, 26) . . . They allege that ABPN's MOC requirement constitutes an illegal restraint of trade in violation of Section 1 of the Sherman Act. . . . Specifically, they assert that ABPN's practice of requiring psychiatrists and neurologists to complete MOC in order to preserve their certification constitutes an illegal 'tying" agreement whereby ABPN improperly exercises its monopoly power in certification (the 'tying product') to force consumers to buy MOC (the 'tied' product). . . .According to Plaintiffs, MOC is a separate product that occupies a different product market than certification, namely, the product market for continuing professional development products, or 'CPD.' . . ."

*Lazarou v. Am. Bd. of Psychiatry & Neurology*, No. 19 CV 01614, 2023 WL 6461255, at *2 (N.D. Ill. Oct. 4, 2023) (footnote and internal citations to FAC omitted); *compare* SAC *generally* and specifically at ¶¶ 6-7, 9-10, 12-13 (swapping FAC's "CPD" for SAC's "CME").

The *only* change since Plaintiffs filed their first complaint on March 6, 2019 is the fact that *every* court that has analyzed this industry, facts, legal theory and causes of action has rejected them – both at the district court level as well as two United States Courts of Appeal. This Court dismissed the first complaint on September 11, 2020, because, among other deficiencies, "plaintiffs have not plausibly alleged that ABPN's initial certification and MOC are distinct products." ECF No. 60 at 12. Plaintiffs' FAC focused primarily on attempting to show that ABPN's MOC is equivalent to other continuing professional development ("CPD") products.[2] *See generally* FAC, ECF No. 63. This Court dismissed the FAC on October 4, 2023, because, among other deficiencies, "Plaintiffs have failed to allege that MOC and certification are separate products." ECF No. 87, [*Lazarou*, 2023 WL 6461255, at *6]. Plaintiffs now bring their SAC based on the identical legal theories and claims as in the FAC, merely substituting the term CPD for CME ("continuing medical education"). *See generally* SAC, ECF No. 94.

---

[2] Plaintiffs' initial Complaint asserted both tying theories in a single count, which were split into separate counts in the FAC (*per se* tying and Rule of Reason tying. Plaintiffs' initial Complaint asserted a count for illegal monopolization that was dropped in the FAC and SAC.

All other courts that have looked at this theory and under these circumstances have dismissed (or affirmed the dismissal) these claims. Two other identical cases have been filed against other ABMS-member boards, by the same attorneys bringing this lawsuit: 1) *Siva v. American Bd. of Radiology* (N.D. Ill.) and 2) *Kenney et al. v. American Bd. of Internal Med.* (E.D. Pa). As this Court knows, calling it a case with "nearly identical tying claims" [ECF No. 87 at 13], the Seventh Circuit Court of Appeals affirmed the dismissal of the *Siva* case. *Siva v. Am. Bd. of Radiology*, 38 F.4th 569, 572 (7th Cir. 2022). The *Kenney* case was dismissed with prejudice and that dismissal was affirmed by the Third Circuit Court of Appeals. *Kenney v. Am. Bd. of Internal Med.*, 847 F. App'x 137, 139 (3d Cir. 2021).

Despite changing the competitive market from CPD to CME, the SAC fails to state a claim and should be dismissed. Plaintiffs fail to plausibly allege that MOC and initial certification are separate products as required to support tying claims or that MOC is a product that is competitive to CME products where the products have separate purposes and functions. Furthermore, with the tying claims dismissed, Plaintiffs' unjust enrichment claim should then also be dismissed for lack of jurisdiction.

Finally, Plaintiffs' SAC should be dismissed with prejudice. *See*, Lazarou 2023 WL 6461255, at *9 (granting Plaintiffs "one last chance to replead their claims."). Given that Plaintiff would now have failed to plausibly plead the same causes of action, under the identical factual framework and same legal theory for the third time, any repleading would be futile.

## **LEGAL STANDARD**

While the burden is on the ABPN to establish the complaint's insufficiency, *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020), the Court we need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of a line between possibility and plausibility of entitlement to relief." *Id.*

"[E]nsuring compliance with this standard is particularly important in the antitrust context so as to avoid 'the potentially enormous expense of [antitrust] discovery in cases with no reasonably founded hope' of success." *Siva*, 38 F.4th at 575 (citing and quoting *Twombly*, 550 U.S. at 559). This is even more so where the antitrust case seeks class action status. *Twombly,* 550 U.S. at 559; *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 n. 4 (2d Cir. 2007).

## **ARGUMENT**

Plaintiffs' tying claims, divided into separate *per se* and rule of reason claims, fail as a matter of law. Because *per se* and rule of reason tying claims must satisfy common elements, the ABPN, as this Court did in dismissing the FAC (*Lazarou*, 2023 WL 6461255, at *4), will consider the two causes of action together. *See Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 468 (7th Cir. 2020) ("The factual elements that must be proven for a tying claim capture much of what must be demonstrated in a rule of reason case").

Tying arrangements involve "an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product..." *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5–6 (1958); *see also Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461−62 (1992); *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 11−12 (1984), *abrogated on other grounds by Illinois Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006). To successfully plead a tying claim, a plaintiff must allege four elements: (1) two separate products or services; (2) sufficient economic power in the tying product market to restrain free competition in the tied product market; (3) a substantial amount of interstate commerce affected

by the tie; and (4) some economic interest in the sales of the tied product on the part of the defendant. *Siva* 38 F.4th at 574 (citing *Reifert v. S Cent. Wis. MLS Corp.*, 450 F.3d 312, 316 (7th Cir. 2006)); *Lazarou*, 2023 WL 6461255, at *4.

I. **PLAINTIFFS' TYING CLAIMS FAIL AS A MATTER OF LAW BECAUSE CERTIFICATION AND MOC ARE NOT SEPARATE PRODUCTS.**

"[A] tying arrangement cannot exist unless two separate product markets have been linked." *Jefferson Parish*, 466 U.S. at 21. As this Court previously recognized, "[the Court] must 'look through labels to substance,' to make this determination, since '[a] savvy lawyer can describe any product as a tie of its components, and any tie as a single product.'" *Lazarou*, 2023 WL 6461255, at *4 (citing and quoting *Siva*, 38 F.4th at 572, 575).

"[T]he answer to the question whether one or two products are involved turns not on the functional relation between them, but rather on the character of the demand for the two items." *Jefferson Parish*, 466 U.S. at 19 (footnote omitted); *Viamedia*, 951 F.3d at 469. Separate product markets exist, for the purpose of a tying claim, only where "there is a sufficient demand for the purchase" of the tied product separate from the tying product "to identify a distinct product market in which it is efficient to offer [the tied product] separately from [the tying product]." *Jefferson Parrish*, 466 U.S. at 21–22. The question of whether a distinct product market for the tied product exists must be assessed at the "pre-contract stage," before the challenged agreement went into effect. *Viamedia*, 951 F.3d at 469. While various factors may be considered, "the mere fact that two items are complements, or that one is useless without the other does not make them a single product." *Siva*, 38 F.4th at 576.

A. **Nothing Material Has Changed Between The Dismissed FAC And This SAC.**

This Court dismissed the FAC because certification and MOC were the same product:

> *"Siva v. American Board of Radiology* is instructive. 38 F.4th 569. There, the Seventh Circuit affirmed the dismissal of ***nearly identical tying claims*** based on allegations that the American Board of Radiology's MOC program violated the Sherman Act. *Id.* at 579–81. The plaintiffs alleged, as here, that the MOC was a CPD product and therefore distinguishable from certification. *Id.* at 574. The District Court rejected this analogy and dismissed the case, concluding that initial certification and MOC were the same product. *Id.* at 575. The Seventh Circuit affirmed…*Id.* at 580."

*Lazarou*, 2023 WL 6461255, at *6 (emphasis added).

In the dismissed FAC, Plaintiffs' allegations that the "ABPN's Certification Product and CPD Product Are Separate" were listed at paragraphs 336-370 of the complaint. ECF No. 63 at 68-74. Now, in the SAC, Plaintiffs' allegations the "ABPN's Certification And CME MOC Products Are Separate And Distinct" are listed at paragraphs 188-191 of the complaint. ECF No. 94 at 36-37. A side-by-side comparison (*see* Appendix A at Exhibit 1, attached hereto) demonstrates that other than swapping out "CPD" for "CME" nothing has substantively or materially changed between the dismissed allegations of two separate products in the FAC to those asserted now in the SAC.

As previously mentioned, every federal court that has analyzed whether certification and MOC are separate products, on the identical theories as averred in the SAC, have determined that certification and MOC are a single product and have either dismissed the complaint with prejudice or affirmed the dismissal of those cases. Two other identical cases have been filed against other ABMS-member boards by the same attorneys bringing this lawsuit, asserting the same legal theories and arguments: 1) *Siva v. American Bd. of Radiology* (N.D. Ill.) and 2) *Kenney et al. v. American Bd. of Internal Med.* (E.D. Pa). As this Court is aware, the Seventh Circuit Court of Appeals affirmed the dismissal of the *Siva* case. *Siva*, 38 F.4th 569. As well, the *Kenney* case was dismissed with prejudice and that dismissal was affirmed by the Third Circuit Court of Appeals. *Kenney v. Am. Bd. of Internal Med.*, 847 F. App'x 137, 139 (3d Cir. 2021).

The theory advanced in *Siva* was:

> "Siva's basic contention is that the Board's MOC program—requiring, as it does, radiologists to complete a variety of continuing education activities to retain their certifications—is nothing but a cleverly named CPD product, just like any other available in that separate market. By Siva's account, then, the Board has used its monopoly in certification—a one-time, early-career assessment of competency—to force radiologists to purchase a lifetime subscription to its CPD offering, a product some radiologists would like to buy from other providers in the CPD market."

*Siva*, 38 F.4th at 574. Faced with this theory, the district court dismissed Siva's complaint, concluding that it had not plausibly alleged the first element of a tying claim—that certification and MOC are two separate products and the Seventh Circuit affirmed. *Id.*[3]

That theory is the same as advanced in the SAC: i) Plaintiffs go to great lengths explaining the history of CME products and attempt to characterize MOC as any other CME product based on similar continuing learning goals (SAC at ¶¶ 5, 7, 9, 28, 76-77, 85-96); ii) the SAC asserts ABPN certification is a one-time, early-career assessment (*Id.* at ¶¶ 40, 45-51); iii) the SAC claims the ABPN leverages its monopoly in certification to force psychiatrists and neurologists to purchase a lifetime of the ABPN's MOC offering (*Id.* at ¶¶ 10-11, 97-98); and iv) that psychiatrists and neurologists would like to buy from other providers in the CME market (*Id.* at ¶¶ 104-105, 159, 174).

Given the parallels to *Siva* and the decision by the Seventh Circuit to affirm the dismissal with prejudice of the complaint, the doctrine of *stare decisis* compels the dismissal of the SAC

---

[3] In analogous cases, Courts have routinely rejected tying claims under the antitrust statutes. *Allyn v. American Bd. of Med. Specialties, Inc.*, 2019 WL 297459, at *6 (M.D. Fla. 2019) (dismissing antitrust unlawful tying complaint against the ABMS and the American Board of Dermatology stating, "it is not clear from the complaint what two separate products are allegedly being tied together."); *see also Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 478 (7th Cir. 1988) ("[P]athology services are not a separate and distinct product from hospital services, they combine in the form of one product, not two tied products. Without two products, the alleged tying arrangement is impossible.").

7

with prejudice. *Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457 (7th Cir. 2005) ("The essence of *stare decisis* is that the mere existence of certain decisions becomes a reason for adhering to their holdings in subsequent cases."); *Bethesda Lutheran Homes & Servs., Inc. v. Born*, 238 F.3d 853, 858–59 (7th Cir. 2001) (For the sake of law's stability, s*tare decisis* bars a different party in a suit from obtaining the overruling of a prior decision by an appellate court with potential jurisdiction over that party's suit); *Paddock Publications, Inc. v. Chicago Trib. Co.*, 103 F.3d 42, 46 (7th Cir. 1996) (holdings of superior courts bind inferior courts even if not thoroughly reasoned); *Miller v. United States*, 868 F.2d 236, 241 (7th Cir. 1989) (holding "bedrock principle of *stare decisis*" is that "lower courts are bound by the precedential authority of cases rendered by higher courts"); *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) ("Ordinarily a lower court has no authority to reject a doctrine developed by a higher one.").

### B. Apart From The *Stare Decisis* Consequence From *Siva*, Certification And MOC Remain A Single Product.

Here, as before, the ABPN provides only one product: board certification of physicians in specific medical specialties. *See* SAC at ¶¶ 36-37, 39. While, in the past, the ABPN offered lifelong certifications, for the past twenty-five years or so it has only offered time-limited certifications requiring additional activities to maintain that certification on an ongoing basis. *See Id.* at ¶¶ 85, 90-91. Regardless, the one and only product that physicians demand is board certification. *See Id.* at ¶¶ 52-74. MOC is not a separate stand-alone product that is offered distinctively from initial certification, nor is MOC a stand-alone product that any physician demands independent of initial certification. *See Id.* at ¶¶ 86-98, 130, 132.[4]  Moreover, ABPN's automatic enrollment of

---

[4] This fact – that physicians do not demand MOC separately from initial certification – is the theory and gravamen of Plaintiffs' SAC. *See, e.g.*, *Id.* at ¶¶ 86-98, 136-144.

physicians in MOC after they have obtained initial certification[5] is further proof it is one product; when a consumer enters an automatic renewal program, they are not buying two products – the product itself and a "renewal" product – they are buying one product which they wish to renew.

Despite adding allegations regarding ABPN's prior CPD/CME offerings in the 1970's and 1980's, Plaintiffs have not, and cannot, allege that ABPN has ever sold initial certification and MOC separately. Plaintiffs can only allege that MOC is another CME product by making conclusory allegations largely based on the general idea that MOC and CME both promote continued learning and professional development. *See, e.g.*, *Id.* at ¶¶ 9, 78, 87. Plaintiffs' characterizations are only successful if they ignore their own contradictory allegations that admit that MOC is a requirement of continuing certification. *See, e.g.*, *Id.* at ¶¶ 12, 24, 58, 62, 85, 91, 96.

As was recognized in the Seventh Circuit, the question "whether one or two products are involved" turns on "the character of the demand for the two items." *Siva*, 38 F.4th at 575. And, affirming the dismissal of the amended complaint in *Siva*, the character of demand for initial certification and MOC is the same, as both relate to certification from ABPN:

> "If we start with 'how the market participants have sold and purchased the [items],' it is easy to see that CPD products and certifications are separate products. *Viamedia*, 951 F.3d at 469. Prior to the creation of the MOC program, Board certifications were valid for life, and radiologists separately purchased CPD products from third-party vendors, both to comply with state licensing requirements and, one imagines, for their own betterment as medical professionals. Siva's complaint identifies various institutions—medical schools, professional societies, clinics, and the like—that have sold CPD products to radiologists 'for decades' without selling accompanying certification products. All told, 'the character of the demand' for CPD products is distinct from that for certifications, so they are separate products under *Jefferson Parish*, 466 U.S. at 19, 104 S.Ct. 1551."

*Siva*, 38 F.4th at 576.

---

[5] *See Id.* at ¶¶ 159, 174.

Identically here: i) prior to the MOC program, Board certifications were valid for life (SAC at ¶ 125); ii) psychiatrists and neurologists separately purchased CME products from third-party vendors (*Id.* at ¶¶ 29, 81, 100, 108); iii) CME products are purchased to comply with state licensing requirements (*Id.* at ¶¶ 33-34)[6]; and iv) various institutions—medical schools, professional societies, clinics, and the like—have sold CME products to psychologists and neurologists "for decades" without selling accompanying certification products (*Id.* at ¶¶ 100, 188(f)).

Where Plaintiffs admit that physicians would not purchase MOC from ABPN if not for the tie, "the competitive purposes of the rule against tying are not served by fractioning" initial certification and MOC into separate components, "as there is no market distinct from that of certification itself for those unbundled components." *Siva*, 2021 WL 76824 at *4.

Even if MOC serves a similar purpose as to lifelong learning like other CME products, Plaintiffs' allegations simply fail to account for and separate MOC from its integration with the ongoing certification process that does not exist with other CME products. As this Court previously acknowledged, other CPD products do not maintain ABPN certification. *See* ECF 60 at 8, 11 (noting that other organizations like NBPAS do not offer CPD that can maintain ABPN certification, and that such would be an "imperfect substitute"); *see also Siva*, 2021 WL 76824 at *5 (explaining that other CPD products are not fungible with MOC and that "a maintenance-of-certification program that lacks the imprimatur of the certifying entity has no value to any physician seeking to demonstrate that he has obtained and maintained certification.").

---

[6] Moreover, ABPN plays no role in the requirements for state licensure and none of the state medical boards issuing physician licenses require purchase of or participation in MOC. *Ass'n of Am. Physicians & Surgeons, Inc. v. Am. Bd. of Med. Specialties*, No. 14-CV-02705, 2020 WL 5642941, at *3 (N.D. Ill. Sept. 22, 2020), *aff'd*, 15 F.4th 831 (7th Cir. 2021).

Finally, the risk of foreclosing competition in this case is non-existent where only ABPN can offer ABPN certification and set those requirements. *Siva*, 2021 WL 76824 at *6. Likewise, where Plaintiffs allege that MOC lacks value to physicians aside from its connection to ABPN certification, MOC is a "phantom product" that has no value and is unwanted, making the foreclosure of other suppliers impossible. *Id*.

C. **MOC Is Not A Substitute For Other CME Products.**

As this Court and the Seventh Circuit recognized, merely stating that MOC competes in the CPD market "is not enough". *Siva*, 38 F.4th at 578; *Lazarou*, 2023 WL 6461255, at *6. Plaintiffs "must plead facts making it plausible that MOC is a substitute for other CPD products." *Id.* This requires plausible allegations of "cross-price elasticity," i.e., that MOC and other CPD products would be "reasonably interchangeable in the minds of relevant consumers." *Id.* Specifically:

> "To do so, the well-pleaded facts in Siva's complaint must permit an inference of what economists call "cross-price elasticity" between MOC and other CPD offerings, such that—in a world without the tying arrangement—an increase in the price of other CPD products relative to MOC would shift sales to MOC."

*Siva*, 38 F.4th at 578.

Rather than a CME price increase shifting sales to MOC, Plaintiffs allege the contrary – that MOC is worthless and would never be purchased even with a price increase in CME. *See*, SAC at ¶¶ 88-98, 136-144. Also, that the demand for CME is "driven largely by state licensing requirements. *Siva*, 38 F.4th at 579; *see as here,* SAC at ¶¶ 33-34. And thirdly, there is "no indication in the complaint that the Board itself produces, offers, or otherwise has a financial stake in any accredited CME products. Instead, MOC's primary feature is a requirement that radiologists purchase CME (or CPD) products from *other* providers", *Siva*, 38 F.4th at 579; *see as here,* SAC, *generally.*

11

Finally, one basis of this Court's dismissal of the FAC was the failure of the Plaintiffs to "plausibly allege cross-price elasticity between MOC and other CPD products." *Lazarou*, 2023 WL 6461255, at *6 (citing *Siva*, 38 F.4th at 580). Despite this clear "shot across the bow," Plaintiffs' ***only*** attempt to remedy this shortcoming in the SAC is a ***single***, conclusory allegation.

> "Because doctors are price sensitive, but for ABPN's tie, the cross elasticity of MOC and other CME products would be high. For example, a price increase in MOC would lead to significant switching by doctors to other CME products but for ABPN's tie that would result in their certifications being revoked."

SAC at ¶ 201.

This single, unsupported and conclusory allegation is not plausible and is insufficient to save Plaintiffs from the dismissal of their SAC. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Lazarou*, 2023 WL 6461255, at *4 ("[the Court] must 'look through labels to substance,' to make this determination…") (citing *Siva*, 38 F.4th at 572, 575).

## II. EVEN IF THIS COURT FINDS CERTIFICATION AND MOC ARE SEPARATE PRODUCTS, PLAINTIFFS' TYING CLAIMS STILL FAIL AS A MATTER OF LAW AS PLAINTIFFS HAVE FAILED TO PLAUSIBLY ALLEGE ACTUAL COERCION OR FORCE.

### A. Psychiatrists And Neurologists Are Free To Purchase Certification Without MOC.

The SAC fails to cure a defect that this Court identified in both the original complaint and the FAC, namely:

> "We note, however, that the First Amended Complaint has not cured another defect that was previously identified with Plaintiffs' initial complaint: the absence of plausible allegations of a "forced purchase" forbidden by antitrust law. *See* R. 60; *see also Jefferson Parish*, 466 U.S. at 21 n.31 ("The common core of ... unlawful tying arrangements is the forced purchase of a second distinct commodity")."

*Lazarou*, 2023 WL 6461255, at *8.

Specifically, this Court stated that Plaintiffs' allegation that psychiatrists and neurologists are "compelled to purchase MOC because of the adverse economic consequences that would result from a revocation of the certification…. and not by the ABPN itself", indicates that Plaintiffs are free to purchase initial certification without MOC. *Id.*

The defect this Court identified in the original complaint and FAC remains in the SAC. Once again Plaintiffs contend that the adverse consequences of not maintaining Board certification are imposed by third parties like hospitals and insurance companies. *See, e.g.*, SAC at ¶¶ 52-57, 64-70, 72 ("Because hospitals and other medical organizations and insurance companies require psychiatrists and neurologists to be certified…"). Thus, indicating (as, indeed, is the indisputable fact), psychiatrists and neurologists are free to purchase ABPN initial certification without MOC. *Id., generally*, and *specifically* at ¶ 235 ("Because there is sufficient demand for certification without MOC, it is efficient for ABPN to sell its certification product alone. Indeed, ABPN has done so for many decades.").

In addition, recalling that the tying analysis must be assessed at the "pre-contract stage," before the challenged agreement went into effect, *Viamedia*, 951 F.3d at 469, Plaintiffs admit that MOC was, at the pre-contract stage, voluntary. *Id.* at ¶¶ 85-87. Moreover, while under perhaps sympathetic circumstances, named Plaintiff Lazarou effectively purchased ABPN certification but chose not to achieve MOC. *Id.* at ¶¶ 158-162, 169.

As this Court previously recognized, requirements by third parties, like hospitals and insurers, does not constitute force or coercion. ECF 60 at 13 n.4 (citing *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 399 (7th Cir. 1989); *Lawline v. Am. Bar Ass'n*, 956 F.2d 1378, 1383 (7th Cir. 1992); *United States Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 906 (N.D. Ill. 2019)). The ABPN does not require any physician to become board

13

certified, or to purchase MOC and maintain their continuing certification for any given length of time beyond initial certification. Absent forcing, there can be no illegal tying and the SAC should be dismissed.

### B.  MOC Is Not A True Competitor In The CME Market.

For Plaintiffs' tying claims to survive the "force" requirement, Plaintiffs must plausibly allege that MOC is in fact a CME product that competes on the merits in that separate CME market. *Jefferson Parish*, 466 U.S. at 12, 104 S.Ct. 1551; *Siva*, 38 F.4th at 573-574, 578.

One of the components of the MOC program is the requirement that psychiatrists and neurologists obtain a certain number of Category 1 CMEs from third party CME vendors – as ABPN does not provide Category 1 CMEs. SAC at ¶ 100. But without the allegation that the ABPN "itself actually produces, offers, or otherwise has a financial stake in any accredited CME products", Plaintiffs' tying claims "[c]ome undone". *Siva*, 38 F.4th at 579-580. Plaintiffs make no such allegations in the SAC, nor can they because it is simply not true. *See generally* SAC.

### C.  MOC Poses No Threat To The CME Market.

As before, and as in *Siva* (*Siva*, 38 F.4th at 580), Plaintiffs contend that MOC is effectively useless (SAC at ¶¶ 136-144), invalid (*Id.* at ¶ 136), "only 12 percent of doctors… value[] MOC (*Id.* at ¶ 140), is a "burden" (*Id.* at ¶ 141),and of "no 'significant value'" (*Id.* at ¶ 142).

Such allegations are fatal to Plaintiffs' tying claims. To the contrary, they confirm that no psychiatrist or neurologist shopping for CME products would voluntarily purchase MOC if given the option. *Siva*, 38 F.4th at 580. Therefore, the products are not substitutes. *Id.*

As the Supreme Court in *Jefferson Parish* explained, "when a purchaser is 'forced' to buy a product he would not have otherwise bought even from another seller in the tied product market, there can be no adverse impact on competition because no portion of the market which would

14

otherwise have been available to other sellers has been foreclosed." 466 U.S. at 16, 104 S.Ct. 1551. If MOC is truly useless as a CME product, then forcing psychiatrists and neurologists to buy it poses no threat to competition in the CME market. The arrangement is therefore innocuous from an antitrust perspective. *Siva*, 38 F.4th at 580.

## III. THE UNJUST ENRICHMENT CLAIM SHOULD BE DISMISSED.

Where Plaintiffs' federal tying claims fail, the Court should decline to exercise jurisdiction over their unjust enrichment claim in Count Three, which is governed by Illinois law. *Lazarou*, 2023 WL 6461255, at *9. Even if Plaintiffs' federal claims survive dismissal, their certifications and purchases of MOC are governed by contracts (s*ee, e.g.*, SAC at ¶ 50), which precludes their unjust enrichment claim under Illinois law. *See, e.g.*, *Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, No. 14-C-1512, 2017 WL 1105400, *13 (N.D. Ill. 2017) (internal quotations and citation omitted).

## IV. THE SAC SHOULD BE DISMISSED WITH PREJUDICE.

District courts have broad discretion to deny leave to amend where there is repeated failure to cure deficiencies or where the amendment would be futile. *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012), *as amended* (Feb. 2, 2012). A futile repleading includes, as here and among other things, restating the same facts using different language, reasserting claims previously determined, failing to state a valid theory of liability, and the inability to survive a motion to dismiss. *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 970 (7th Cir. 1994).

## CONCLUSION

For the above reasons, the SAC should be dismissed in its entirety and with prejudice.

Dated: February 9, 2024

Respectfully submitted,

/s/ *Christopher Sullivan*
Christopher B. Sullivan
MITCHELL BARLOW & MANSFIELD, P.C.
9 Exchange Pl., STE 600
Salt Lake City, Utah 8411
Tel: (801) 998-8888
csullivan@mbmlawyers.com

Anne I-Pin Shaw
Darryl Tom
SHAW LEGAL SERVICES, LTD.
540 W. Briar Place, Unit B
Chicago, Illinois 60657
ashaw@shawattorneys.com
dtom@shawattorneys.com

*Attorneys for Defendant American Board of Psychiatry and Neurology*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 9, 2024, the foregoing **BRIEF OF DEFENDANT IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT** was electronically filed with the Clerk of the Court using the CM/ECF system which automatically sent notification of such filing by email to the following:

C. Philip Curley (pcurley@robinsoncurley.com)
Robert L. Margolis (rmargolis@robinsoncurley.com)
ROBINSON CURLEY P.C.
200 North LaSalle Street, Suite 1550
Chicago, IL 60601

                                                 */s/ Darryl Tom*